**In re Joseph AIELLO, Debtor.**

**No. 02–12642–608.**

United States Bankruptcy Court,
E.D. New York.

Nov. 4, 2002.

248 B.R. 16, 19–20 (Bankr.D.Conn.1999).

Diana G. Adams, New York City, Office of the United States Trustee.

David J. Doyaga, Doyaga & Schaeffer, Brooklyn, NY, Chapter 7 Trustee.

Brian M. DeLaurentis, New York City, for Debtor.

## DECISION AND ORDER

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of the United States Trustee seeking dismissal of this chapter 7 case for substantial abuse pursuant to § 707(b) of title 11, U.S.C. (the "Bankruptcy Code"). For the reasons set forth herein, the motion is granted.

### Facts

The facts relevant to this motion are not in dispute.

Joseph Aiello ("Debtor"), a 40 year-old man residing in New York, employed as an import-export manager for a fashion company, and without dependents, filed a chapter 7 petition on March 1, 2002. The Debtor appeared at two 341 meetings on March 29, 2002 and on May 3, 2002, in addition to appearing at a 2004 examination on August 7, 2002. On August 2, 2002, the United States Trustee filed a motion ("Dismissal Motion") seeking dismissal of the chapter 7 case for substantial abuse pursuant to Bankruptcy Code § 707(b). The motion was heard on October 3, 2002, at which time the Debtor and the United States Trustee declined to put on testimony, and agreed that this motion may be decided based upon the parties' written submissions.

### Discussion

Section 707(b) of the Bankruptcy Code provides that

> After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee ... may dismiss a case filed by an individual debtor under this chapter [7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The United States Trustee contends that under the totality of the circumstances, given that (1) the Debtor has incurred primarily consumer debts; (2) the debtor has the ability to repay a significant portion of his pre-petition debts out of his post-petition earnings under a chapter 13 plan; and (3) the Debtor quadrupled his voluntary contribution to his retirement

plan on the eve of the filing of his bankruptcy petition and attempted to conceal this fact at his § 341 meeting, this chapter 7 filing is a "substantial abuse," warranting dismissal under § 707(b). The Debtor argues that his case should not be dismissed, contending that his schedules show expenses which are not extravagant, and that he has not engaged in any improprieties, wrongdoing, or fraudulent activity warranting dismissal of his case.

### Primarily Consumer Debt

■ Section 707(b) is applicable only to a chapter 7 petition of an individual debtor "whose debts are primarily consumer debts." The Bankruptcy Code defines "consumer debt" as "debt incurred primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8); *see In re Vianese,* 192 B.R. 61 (Bankr.N.D.N.Y. 1996) (interpreting "primarily consumer debt" under § 707(b) as requiring that consumer debt exceed 50% of the total amount of debts and that the number of consumer debts exceed at least half of the total number of debts as well.) The credit card statements produced by the Debtor for the years 2000 and 2001 show consumer purchases including theater tickets, veterinary costs, gasoline and oil, dinners at restaurants and supermarket purchases. (United States Trustee Application ¶ 33 [1].) Furthermore, at the 2004 examination on August 7, 2002, Debtor testified that his credit card debt was the result of purchases for "living expenses." (United States Trustee Application, ¶ 35, 2004 TR at 6 [2].) Although the Debtor contends that $7,000 of the debt listed on his petition was incurred to pay for medical expenses of a "cohabiting domestic partner" in 1995, this

amount (even if not considered "consumer debt" for the purpose of § 707(b)) is only one quarter of the total indebtedness scheduled. From the foregoing, it is clear that Debtor's debts are primarily consumer debts.

### Substantial Abuse Test

The Bankruptcy Code does not define "substantial abuse." Courts interpreting this term have struggled to separate honest debtors who truly need the fresh start provided by chapter 7 relief from debtors who are attempting to abuse the bankruptcy system and obtain a head start. *In re Carlton,* 211 B.R. at 477, *aff'd sub nom. Kornfield v. Schwartz (In re Kornfield),* 214 B.R. 705 (W.D.N.Y.1997), *aff'd,* 164 F.3d 778 (2d Cir.1999).

■ In *Kornfield,* the Second Circuit adopted a "totality of circumstances" test to determine whether a case may be dismissed under § 707(b) for substantial abuse. *Kornfield,* 164 F.3d at 783 (noting with approval that the bankruptcy court had applied "a totality of circumstances test that was well within the mainstream of analysis used by other circuits"). The test applied by bankruptcy court in *Carlton,* which was approved in *Kornfield,* is a two-part inquiry which considers the debtor's ability to pay as the primary factor and then weighs other circumstances to determine whether there are any mitigating factors warranting discharge or any aggravating factors warranting dismissal of the chapter 7 petition. *In re Carlton,* 211 B.R. 468, 477–78 (Bankr.W.D.N.Y. 1997). This approach was adopted by bankruptcy courts following *Kornfield* in

---

**1.** References to "United States Trustee Application" refer to the U.S. Trustee's Application to Dismiss the Debtor's chapter 7 Case for Substantial Abuse pursuant to 11 U.S.C. § 707(b).

**2.** References to "2004 TR" refer to the transcript of the 2004 examination of the Debtor on August 7, 2002.

*In re Heffernan,* 242 B.R. 812, 816 (Bankr. D.Conn.1999), and in *In re Haddad,* 246 B.R. 27, 32 (Bankr.S.D.N.Y.2000).

■ In evaluating a debtor's ability to pay, a court considers "the 'disposable income' that d be available to pay creditors under a hypothetical chapter 13 plan". *In re Haddad,* 246 B.R. at 32. The definition of disposable income for the purposes of a chapter 13 plan is "income which is received by the debtor which is not reasonably necessary to be expended for the maintenance and support of the debtor or a dependent of the debtor." In determining what is a "reasonably necessary" expense, the court will look at the debtor's budget, deduct expenses which are deemed unnecessary, and add them to the disposable income estimation. *See e.g., In re Haddad,* 246 B.R. at 37 (the court deducted certain unnecessary expenditures, such as cable television and beautification expenses, from debtor's budget and added them to debtor's disposable income). The court then determines whether debtor has an ability to pay under one of the following scenarios: (1) whether the debtor could pay all priority and unsecured debt in a chapter 13 case under a plan of one to five years, or over a reasonable period of time in a chapter 11 case; (2) whether the debtor could pay all priority debt and a significant percentage of unsecured debt through such a chapter 11 or 13 plan; or (3) whether the debtor could pay a significant dollar amount, regardless of percentage, to unsecured creditors through a chapter 13 or chapter 11 plan. *In re Carlton,* 211 B.R. at 477. Although there is no specific percentage of the unsecured debt which must be capable of being repaid in a chapter 13 plan in order to find that the debtor has an ability to pay, most courts have found that the ability to repay 50% of unsecured debt over the life of a hypothetical chapter 11 or 13 plan is suffi-cient to constitute an "ability to pay." Robert M. Thompson, *Consumer Bankruptcy: Substantial Abuse and Section 707 of the Bankruptcy Code,* 55 Mo. L.Rev. 247, 263–64 (1990) (noting that rule of thumb in reported cases appears to be 50% over life of the plan).

■ After analyzing the debtor's disposable income, assuming that it finds that the debtor has an ability to pay, the court then considers whether there are additional mitigating or aggravating factors. *Carlton,* 211 B.R. at 478. Factors relevant to the analysis include, but are not limited to:

(1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;

(3) whether the petition was filed in good faith;

(4) whether the debtor showed good faith and candor in filing schedules and other documents;

(5) whether the debtor has engaged in "eve of bankruptcy purchases";

(6) whether unforeseen or catastrophic events forced the debtor into chapter 7;

(7) whether debtor's disposable income permits liquidation of consumer debts with relative ease;

(8) whether the debtor enjoys a stable source of future income;

(9) whether the debtor is eligible for adjustment of his debts through chapter 13;

(10) whether there are state remedies with the potential to ease the debtor's financial predicament;

(11) whether there is relief obtainable through private negotiation, and to what degree;

(12) whether the debtor's expenses can be reduced significantly without depriv-

ing him of adequate food, clothing, shelter, and other necessities;

(13) whether the debtor has significant retirement funds;

(14) whether the debtor is eligible for relief under chapter 11 of the Bankruptcy Code; and

(15) whether there is no other choice to the debtor for working out his financial problems other than chapter 7, and whether the debtor has explored or attempted other alternatives.

*In re Carlton*, 211 B.R. at 478.

■ Courts also look to other factors such as the existence and size of exempt assets such as pension plans and retirement funds, because such assets are relevant to a debtor's financial planning and thus have an impact on a debtor's ability to repay its debts. *In re Haddad*, 246 B.R. at 33.

### *Ability to Pay*

■ The Debtor's Statement of Financial Affairs lists his 2001 gross income as $50,000, and his 2000 gross income as $45,000. The Debtor's summary of schedules shows that his assets consist of personal property with a total value of $6,550, of which $6,350 is claimed as exempt. The largest component is the pension plan fund which is listed as valued at $2,500. The schedules reflect $27,977 owed to unsecured nonpriority creditors, which represents the total of debts owed by the Debtor.

Schedule I of the petition shows a Total Net Monthly Income of $2,085 and Schedule J shows Total Monthly Expenses of $2,170, leaving no net disposable income. However, Schedule I shows 401(k) contributions of $700 per month (or $346.15 bi-

weekly). This was admitted by the debtor to be an error, in that the maximum contribution permitted a $576 per month (or $288.46 bi-weekly). (Ex. 4 at 8–9)[3]. Accordingly, this Court will add the difference, $124, to Debtor's total net monthly income.

This Court agrees with the United States Trustee that, for the purpose of evaluating the debtor's ability to pay under the "totality of the circumstances" test, that the Debtor's contributions to his 401(k) plan should be reduced to, at most, $300 per month, which would still represent an increase in Debtor's 401(k) contributions from 6% of his gross income ($140 per month), contributed during the one and a half years prior to filing his chapter 7 petition, to approximately 15% of his gross income. Based upon his Schedules I and J, Debtor's voluntary contributions to his 401(k) plan of $576 per month represent approximately 27% of his gross income.

The Second Circuit recently addressed whether amounts contributed by the debtor to a pension or 401(k) plan must be included in the debtor's "disposable income" for the purposes of § 1325(b)(2). In *New York City Employees' Retirement System v. Sapir (In re Taylor)*, 243 F.3d 124 (2d Cir.2001), the court declined to adopt a per se rule, finding instead that "[i]t is within the discretion of the Bankruptcy court judge to make a decision, based on the facts of each individual case, whether or not the pension contributions qualify as a reasonably necessary expense for that debtor." In making this determination, the court held that

"[T]he bankruptcy judge may evaluate any factors properly before the court,

---

**3.** Ex. 4 refers to the transcript of the adjourned meeting of creditors held on May 3, 2002.

CmQ5LcbJlOCwlbS8blz3XzzmwnpPNeXfU3DSfhNA/wGa3VeyyltU6a1nFDm0Ntlb5gBP8VzMC5aN1vfE2q1Ec5L9OBSa8odH5PQ8PxjeJOy/ZjN2mGpS5xt/h4DIfGPdQvNSt0rj0q7ZJ9Hs2IQ 29.oPXpUm7jQUgesCe9rzTXdPcg88C+JM/zeOqkmX5vfMWhFHuO8VpgbdQGfNPQPPWgZVCL6v3A0r9aQnTl0qLuz4ixC0G7SmPEkpGy0zPRF8VguzDgE1ea0xJZJ9I8c22fB7skGhfr0hqd+HHZQ9j2OaXT0nZFQRZgx6wXuyVmqe80Ld54IvI09C9F8LA3LqwwrCRJIWdtQL5Ja1XzaHZ1iXG6Gg15o1oBFJmFsFuMDO9jYg5IXxlNlf1pUyTEQ+xZUmjNTfrIgHJRlHyY1tMgHCqDcJ9vDyu/Wwfs5TQXNEdGaa+lIJ6ntOeWBYr0SZ3IEb0xhs1hE6sBNvCc+GoQL9pnGZ6yMRgjbywktO0fLcSzRUr4Ym4BcDaP04DXYYfTiLKNT6YPr6rN9mCVmOxsJmzs1yTOozxdcKW6f3s8F9V6AYpVfhFo2BYhUpKN/m1rLJqf5EC4uJBFzoeDRqPoyPGtJtG5B7dvZBXTy/lJMPmnN3Djn9QCr2BbfoJMXBNKuWDmdTMVkQVgTd3xW0fdXLQ0bPEIAd5FAgYVrBZIx+cE2Hx5V+5TfBEBy1kZJRfMOKnr6AdAbwBYkWmcL3Lm8UsyDMKVWgDdb/AfYh4dDjzvx7jD+/4AAAAASUVORK5CYII=
including but not limited to: the age of the debtor and the amount of time until expected retirement; the amount of the monthly contributions and the total amount of pension contributions debtor will have to buy back if the payments are discontinued; the likelihood that buy-back payments will jeopardize the debtor's fresh start; the number and nature of the debtor's dependents; evidence that the debtor will suffer adverse employment conditions if the contributions are ceased; the debtor's yearly income; the debtor's overall budget; who moved for an order to discontinue payments; and any other constraints on the debtor that make it likely that the pension contributions are reasonably necessary expenses for the debtor."

*In re Taylor*, 243 F.3d 124, 130 (2nd Cir. 2001)

When the factors identified in *Taylor* are evaluated in the instant case, it is apparent that, as the United States Trustee contends, at least $276 of the $576 per month currently contributed by the debtor to his 401(k) plan must be included in the debtor's disposable income. Facts leading to this conclusion include the relatively young age of the Debtor (25 years away from retirement age), his yearly income, the fact that he has no dependents, the fact that the contributions are voluntary and that the Debtor will not suffer any adverse employment conditions if the contributions are reduced, the fact that the Debtor will have no obligation to buy back pension contributions if the contributions are reduced, and the fact that prior to meeting with his bankruptcy attorneys, Debtor had been funding his pension plan in the amount of $140 per month, or 6% of his gross income. When these excess contributions are added, Debtor's disposable income is $315 per month.

Under a chapter 13 plan, with disposable income of $315 per month, the debtor could repay more than 40% of his unsecured debt in a 36 month plan. Under a five year plan, the Debtor could repay 67% of his unsecured debt. These calculations make it apparent that a chapter 13 plan would provide creditors both a substantial dollar amount and a significant percentage of their claims. In contrast, unsecured creditors will receive almost nothing if the Debtor is granted a chapter 7 discharge, given that the Debtor has nonexempt assets of only $200. This Court accordingly concludes that the first prong of the test for substantial abuse, the debtor's ability to pay, has been satisfied.

*Other Relevant Circumstances*

Under the totality of the circumstances approach adopted by the Second Circuit in *Kornfield*, after considering whether a debtor has the ability to pay a substantial part of the unsecured debt, the court must determine whether there are any relevant aggravating or mitigating circumstances. *In re Kornfield*, 164 F.3d at 783 (affirming the bankruptcy court's rejection of a per se ability to pay test). "[The] substantial abuse standard should be applied in moderation with full awareness of the presumption favoring the relief sought by the debtor." *In re Carlton*, 211 B.R. at 477, *citing*, Robert M. Thompson, Comment, *Consumer Bankruptcy & Substantial Abuse and Section 707 of the Bankruptcy Code*, 55 Mo. L.Rev. 247, 264–65 (1990).

Debtor contends that because he did not incur any extravagant expenses prior to filing his petition, and in the absence of egregious fraud or dishonesty, he should be entitled to a chapter 7 discharge. *Cf. In re Haddad*, 246 B.R. at 40–41 (debtor led an extravagant lifestyle, incurring high debt for luxury items and, in addition,

showed signs of bad faith and dishonesty). The United States Trustee does not dispute the fact that Debtor does not lead an extravagant lifestyle, nor that Debtor's income is lower than that of the debtors in *Kornfield* and *Haddad*. Nevertheless, a review of the totality of the circumstances reveals an absence of mitigating factors and the presence of certain aggravating factors warranting dismissal.

Debtor quadrupled his voluntary contributions to his 401(k) plan, increasing his contributions to the maximum amount, only one month prior to filing his chapter 7 petition. (Ex. 3.) At the adjourned meeting of creditors, held on May 3, 2002 (the "May Meeting"), the Debtor testified that, before he increased his deductions to the maximum 401(k) contribution, he had been contributing 5 to 6% of his salary to his 401(k) plan from the time the Debtor's employer commenced the pension plan program in July, 2000 (Ex. 4 at 10–11.). This amount was quadrupled in early February, approximately 10 days after Debtor's counsel began drafting the petition. (Attachment to Statement Pursuant to Local Rule 10(F) shows that Debtor's counsel began drafting the petition on January 27, 2002). As a result, Debtor's contributions to his pension fund had increased from 5 to 6%, from July, 2000 to January, 2002, to approximately 27% on the eve of the filing of the chapter 7 petition. Given that the "totality of circumstances" test is equitable in nature, the fact that Debtor increased his pension contributions to the maximum amount only one month prior to filing bankruptcy, when he had contributed only one-fourth of that amount for one and one-half years before, smacks of abuse.

Furthermore, the Debtor exhibited a lack of candor when questioned about this fact at the § 341 meeting on March 29, 2002, Debtor testified that he had increased his 401(k) contributions to the maximum amount within the last six months (Ex. 2 at 11.) In fact, the first increase in contribution appears in the February 6, 2002 pay stub, approximately 10 days after Debtor's counsel began drafting the petition. (Ex. 4 at 8; Dismissal Motion, ¶ 54.)

A review of the other factors relevant to the "totality of circumstances" test do not reveal any mitigating circumstances. The Debtor's bankruptcy petition was not filed because of sudden illness, calamity or disability. Although Debtor's Affidavit indicates that Debtor's financial problems can be traced, in part, to December 1995 when he incurred $10,000 in medical expenses on behalf of his "cohabitating domestic partner," this amount was reduced to $7,000 from 1997 to 2002 and it is clear that Debtor's current financial problems are primarily a result of other expenses. (Affidavit, ¶¶ 5 and 8.) Moreover, the law is clear that, "although one may feel morally compelled to provide support for non-dependent family members, it is not a legal obligation, while there is a legal obligation to creditors." *See In re Mastromarino*, 197 B.R. 171, 178 (Bankr.Me.1996). There are no unforeseen or catastrophic events which forced Debtor into chapter 7.

The United States Trustee points out that the Debtor is eligible for relief under chapter 13; that he enjoys a stable source of income and that his debts are well within the limits prescribed in Bankruptcy Code § 109(e) for chapter 13 eligibility. (Dismissal Motion, ¶ 56.) Furthermore, although Debtor indicates that he participated in credit counseling services for three years, from 1989 to 1992, and later in the fall of 2001, and that these efforts met with limited success, this alone is insufficient to overcome the aggravating factors, and the lack of mitigating factors, present in this case. *In re Heffernan*, 242 B.R. at 819–821 (although debtors made several

attempts to manage their growing credit card debt, such as placing a second mortgage on their house, borrowing from a 401(k) plan and consulting a credit counseling service, the absence of any other mitigating factors coupled with the debtors' ability to pay 53% of their unsecured debt over 3 years, justified dismissal of debtors' chapter 7 petition pursuant to § 707(b)). Like the debtors in *Heffernan*, the Debtor did not lead an extravagant lifestyle but is rather an individual who has "waged a losing war with credit card debt." *Id.* Like the debtors in *Heffernan*, this Debtor has the ability to pay, without any hardship or change of lifestyle, a significant portion of his unsecured debt.

### Conclusion

Where the Debtor, who for approximately one and one-half years had been contributing $144 per month to his pension plan, on the eve of bankruptcy voluntarily increased that contribution to $576 per month, and where a reduction of those contributions to $300 per month would enable him to pay his creditors more than 60% in a 60 month plan, without any undue hardship or change of lifestyle, and where the Debtor did not show good faith and candor in disclosing these facts in his schedules or at his § 341 meetings, and where there are no mitigating circumstances, the case may be dismissed under § 707(b). If, at the expiration of 20 days after the date of this order, the Debtor has not voluntarily converted his chapter 7 case to a case under chapter 13 pursuant to Bankruptcy Code § 706(a), this case will be dismissed.

IT IS SO ORDERED.