**In re Gary Paul RAY and Linda Ann Ray, Debtors.**

No. 04–25113.

United States Bankruptcy Court, E.D. Michigan, Northern Division.

June 9, 2005.

Bruce K. Havens, Mt. Pleasant, MI, for Debtors.

Karen Evangelista, Auburn Hills, MI, trustee.

### OPINION DENYING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)

WALTER SHAPERO, Bankruptcy Judge.

This matter involves an 11 U.S.C. § 707(b) substantial abuse motion filed by the United States Trustee. Debtor Linda Ray has been married to Debtor Gary Ray for some 32 years. She is 53 years old and has been working at Central Michigan University in the printing department for some 26 years. She presently earns $16.00 per hour, or a monthly gross of $3,075.50. Gary Ray suffers from a mental condition enabling him to receive a social security payment of $1,270 per month. Their Schedule I shows a combined monthly income of $2,858.16, which includes, however, a "403(b) Contribution"

of $556.83 per month. Their amended Schedule J shows total monthly expenses of $2,857. Their unsecured debts total some $58,000 of which about $15,000 is for a so-called Parent Plus student loan balance taken out on behalf of their son. The remaining balance consists of some 23 credit card obligations incurred at various times, some as early as 1993, with balances varying between $137 and $6,155. On the asset side, Gary Ray scheduled a TIAA Retirement Plan of $18,000, drawn down from an original $30,000. Linda Ray scheduled a TIAA Plan balance of $31,975, which she testified may actually have been materially less than that, against which she testified there is an $8,000 loan. The Court assumes for purposes of discussion the referred to "403(b) Contribution" is to that plan.

Debtors' financial situation and the cause of their filing a Chapter 7 case arises in large measure from a dispute with a neighbor over property Debtors sold to that neighbor. The dispute arose in 2001 over claimed violations by Debtors of some building and zoning restrictions. It essentially devolved into an extensive (and expensive) lawsuit which, while initially resolved in Debtors' favor, was reinstated in a somewhat different posture in 2004, in a lawsuit against the municipality which sought to bring in Debtors as a party. The differences with the neighbor persisted to the point that Debtors resolved to sell their residence. Incident to that decision, Debtors spent substantial sums to repair and improve it for purposes of a sale—those expenditures being evidenced by a substantial portion of their credit card debt and possibly loans or withdrawals from retirement account(s). Debtors also were involved in a dispute over legal fees owed incident to a matter involving their son, a settlement of which involved payment of about a $7,000, or so lump sum. Despite the monies spent on the residence improvements, the legal disputes over the property adversely affected its marketability. That, coupled with Debtors' lack of funds to defend the newly instituted lawsuit, left them no choice (at least in their minds), but to deed the property back to the mortgagee in lieu of foreclosure in 2004. Thereafter, they acquired their present residence for some $30,000, the present balance owed on which is some $18,000.

In terms of the future, Linda Ray's earning prospects are that she is eligible, and intends, to retire in about two years, at which time her pension or equivalent will be about 60% of her current earnings. She has some concern that her university employer might privatize the printing operation before then (as it has done with other departments), with the apparently likely effect of accelerating her retirement. At the time of her retirement, her medical insurance premiums will increase. She suffers from an incurable somewhat rare genetic disease from which her father died and her sister has been left paralyzed. Its possible similar effect on her is apparently not readily predictable. Finally, she expects the amounts necessary to take care of her husband will likely increase over time; though that too is difficult to readily predict or quantify.

The United States Trustee argues that at least until Linda Ray retires, her monthly 403(b) contribution should be considered as disposable income (amounting over a two year period prior to her anticipated retirement, to some $13,000), with the result that the Debtors have that ability to pay their creditors a material percentage of their unsecured debt, and that not to do so, constitutes substantial abuse mandating dismissal under Section 707(b).

The law in this circuit on the general subject is primarily set forth in the

cases of *In re Krohn,* 886 F.2d 123 (6th Cir.1989) and *Behlke v. United States Trustee (In re Behlke),* 358 F.3d 429 (6th Cir.2004). *Krohn's* reading of Section 707(b) was that the substantial abuse concept was designed to eliminate the availability of Chapter 7 to an individual with primarily consumer debts who was either: (1) not honest; or (2) not needy. *Krohn,* 886 F.2d at 126. *Krohn,* and other cases, list any number of factors to be addressed in making the decision, some of which primarily pertain to honesty, others to neediness and some to both. *Id.* at 126–27.

■ Important (and sometimes overlooked) is the specific phrase in Section 707(b) that, "[t]here shall be a presumption in favor of granting the relief requested by the debtor." If nothing else, that phrase can be interpreted as placing the burden of proof on the United States Trustee which, as movant, might have it anyway. That presumption can also been seen as an expression of statutory policy in favor of the debtor's choice of which chapter of the Bankruptcy Code best fits his or her circumstances-a conclusion to some extent reinforced by new bankruptcy legislation, which has this issue as one of its centerpieces, and which in essence appears to be designed to minimize judicial discretion and eliminate the presumption.

■ The case at hand under existing law is basically a "neediness" case, rather than an "honesty" one. The noted factors which relate primarily to "neediness" are: (a) the debtor's ability to repay debts out of future earnings with relative ease; (b) stability of income source(s); (c) existence of state remedies with potential to ease the debtor's financial problems; (d) the degree of relief obtainable through private discussions with creditors; and (e) probability of reducing expenses significantly without depriving debtor of necessities. *Behlke* stands for the proposition that contribu-

tions to a plan such as that of the Debtors should be considered as part of disposable income for purposes of the Section 707(b) inquiry. In this case, mathematically if nothing else, that would mean the $556.83 per month should be seen as being available for distribution to creditors under a possible Chapter 13 plan. Virtually all of the other factors, however, militate in favor of Debtors, i.e.: Debtors' income will likely materially decrease during the life of the plan; there are no real state remedies for Debtors' indicated financial problems; private discussions with all of the various credit card creditors, given their number and amount, and as a practical and realistic matter, hold little promise of any meaningful relief; and the United States Trustee has not attacked the nature or amount of Debtors' expenses. In sum, what we have here as essentially the sole basis for a requested substantiated abuse conclusion is nothing more than an arithmetic calculation of the Debtors' ability to make some payments for a limited period.

In the course of its discussion of the meaning of *Krohn,* the Court in *Behlke* stated that:

> *Krohn* clearly holds that the ability to pay *may be but is not necessarily sufficient* to warrant dismissal for substantial abuse.

*Behlke,* 358 F.3d at 434–35 (emphasis added).

The actual language of *Krohn* itself is that, "[s]ubstantial abuse can be *predicated* upon either lack of honesty or want of need." *Krohn,* 886 F.2d at 126 (emphasis added). *Krohn* goes on to charge the Court to:

> ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been

marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. *Id.* "May" does not mean "shall", and predication admits of multiple bases.

 Under current law, inquiry into the totality of the circumstances is thus as much a requirement of the substantial abuse determination in neediness cases as it is in cases of honesty. That means factors other than the sheer mathematical ability to fund a Chapter 13 plan can, and perforce should, be considered, and it is for the Court to appropriately weigh them all within the parameters of what should be seen as substantial abuse.

As noted in this case, in essence the United States Trustee wants to limit the inquiry to only one of the factors going into determination of neediness, i.e.: the ability to pay. That is not this Court's view of the lesson of *Krohn*, nor is it consistent with either the totality of circumstances inquiry mandated by *Krohn*, nor the general concept of "substantial abuse" as *Krohn* articulated it. In this Court's view, and in sum and substance, both of these particular Debtors are honest and needy in the proper senses of those terms. In the context of the facts in this case, the substantial abuse statute does not require that these Debtors completely strip themselves now of essentially their only remaining potential to build (and more accurately in this case rebuild) up for a relatively short two year period some additional savings to help support themselves and deal with the vagaries of life and health for quite possibly 25 years or more (given their ages), particularly when it is clear their income will be materially less and their expenses likely greater and their total ongoing resources likely subject to exhaustion some time during that period.

Accordingly, the United States Trustee has failed to rebut the statutory presumption and/or meet its burden of proof in bringing its motion and, therefore, that motion is DENIED. An appropriate Order will enter.