In re John R. BECKERMAN and
Jennifer A. Beckerman,
Debtors.

No. 06–49172.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 4, 2008.

Donald C. Wilson, Nathaniel H. Herdt, William C. Babut, P.C. Ypsilanti, MI, for Debtors.

David Foust, Detroit, MI, for U.S. Trustee.

## *OPINION GRANTING TRUSTEE'S § 707(b)(3) MOTION*

WALTER SHAPERO, Bankruptcy Judge.

### I. Introduction

The matter before the Court is the United States Trustee's ("UST") Motion to Dismiss the Debtors' case pursuant to 11 U.S.C. § 707(b) for abuse. At the conclusion of the evidentiary hearing, the Court took the matter under advisement. For the reasons that follow, the Court finds the Debtors' filing is an abuse of chapter 7 and dismissal would be warranted.

### II. Facts

On July 14, 2006, John and Jennifer Beckerman ("Debtors"), filed a joint petition for relief under chapter 13 of the U.S. Bankruptcy Code. Their plan was confirmed on October 2, 2006. On January 4, 2007, upon motion of the Debtors, this Court entered an order converting the case to chapter 7. Debtors' petition and amended schedules record total assets of $58,520, consisting primarily of three fully encumbered assets: a mobile home valued at $40,000 and two automobiles with a combined value of $14,500. Against this, total liabilities of $146,177.07 were shown, of which $57,124.39 was unsecured nonpriority debt accrued between the years 2004–2006. The unsecured debt was comprised of the following: (1) $31,651.56 derived from three judgments against the debtors; (2) $15,488.51 in student loans; and (3) $9,984.32 or 17% as general credit card debt and medical expenses.

Mr. Beckerman has been employed as a security guard with MGM Grand Casino for seven years, and Mrs. Beckerman as a financial aid clerk with Washtenaw Community College for five years. Amended Schedules I and J show a combined total net monthly income of $4,579.01, monthly expenses of $5,232.82, and a net monthly deficit of $653.81. Mr. Beckerman makes voluntary monthly contributions of $469 to a 401(k) plan and Mrs. Beckerman makes monthly contributions of $91.85 toward a mandatory pension plan. Retirement contributions for Mr. Beckerman began in or around October 2006, several months after the bankruptcy petition was filed but before the case was converted to chapter 7. Prior to that Mr. Beckerman made no contributions to any retirement plan despite his seven year stint with his current employer. The Debtors are fifty-five years of age and have accumulated $7,036 in retirement savings, the bulk of which comes from Mrs. Beckerman's pension account. (Debtor's Ex. C, D). Estimated monthly social security benefits for Mr. Beckerman based on current earnings range from $1,427 to $2,631, dependent upon age of retirement, and $733 to $1,494 for Mrs. Beckerman. (Debtor's Ex. A, B).

The Debtors have no immediate plans to retire.

The Debtors' three adult children, ages twenty-four, twenty-one, and twenty, live with the Debtors and are supported in large part by the Debtors. The children each attend college and two of the children hold part-time jobs. The children eat all of their meals at home and contribute nothing to the household expenses, but do pay their own transportation costs. Schedule J represents the monthly expenses for a household of five and includes: (1) $1,100 for food; (2) $200 for five cell phones; (3) $150 for clothing; (4) $120 for laundry and dry cleaning; (5) $150 for medical and dental; (6) $180 for the children's tuition and books; and (7) $60 for contingencies. Amended Schedule J reflects $650 monthly transportation costs, $230 monthly auto insurance payments, and combined monthly installment payments on two vehicles, a 2004 Mercury Sable and a 2007 Mercury Milan, of $781.82.

### III. Position of the Parties

The UST argues that Mr. Beckerman's voluntary 401(k) contribution is not necessary for the support of the Debtors and should be considered in a disposable income analysis for the purpose of determining abuse under § 707(b)(3). The UST contends that with the discontinuance of the 401(k) contributions coupled with belt tightening and assistance from the Debtors' adult children, the Debtors could pay a meaningful dividend to unsecured creditors and that the failure to do so is an abuse requiring dismissal.[1]

Debtors claim there is a general rule that 401(k) plan contributions must be in-

cluded in disposable income which does not pertain when the monthly contribution is modest and the debtor is approaching retirement age. Debtors further contend that it is not unreasonable for them to continue to assist their adult children with expenses while the children attend college.

### IV. Discussion

■ Authority to dismiss a case under chapter 7 is derived from 11 U.S.C. § 707(b)(1), which provides in part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1). In those cases where the presumption of abuse does not arise, as here, or is otherwise rebutted, and where bad faith is not a factor, the Court is directed to consider the totality of the circumstances in determining whether dismissal for abuse is warranted. 11 U.S.C. § 707(b)(3)(B). The UST carries the burden of establishing by a preponderance of the evidence the applicability of this ground for dismissal.

### A. Ability to Pay

#### 1. *In re Krohn*

■ In the Sixth Circuit a totality of the circumstances inquiry under § 707(b)(3)(B) involves an analysis of whether the debtor is honest or needy. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *Behlke v. Eisen (In re Behlke)*, 358 F.3d

---

1. The UST did not argue that Mrs. Beckerman's mandatory pension contribution was not reasonably necessary and should also be included in the disposable income analysis. Neither party provided evidence on the terms

of that plan. Therefore, whether the mandatory pension contribution should be included in a disposable income analysis for purposes of a § 707(b) dismissal action is beyond the scope of this Opinion.

429, 434 (6th Cir.2004). Either factor, or both, may provide sufficient justification for dismissal for abuse. The UST relies primarily on language in *Krohn* that states that where debtors have the ability to repay a meaningful portion of their debts from future earnings their chapter 7 filing should be dismissed as an abuse. *Krohn,* 886 F.2d at 126. In *Krohn,* and later in *Behlke,* the Sixth Circuit opined that a debtor's ability to repay his debts out of future earnings may alone justify dismissal for abuse, or more precisely, that "the ability to pay may be but is not necessarily sufficient to warrant dismissal" for abuse. *Behlke,* 358 F.3d at 434–35; *Krohn,* 886 F.2d at 126. This Court has on several occasions reviewed the decisions in *Krohn* and *Behlke* and has interpreted those opinions as follows: the sheer mathematical ability to fund a chapter 13 plan can, and properly should, be considered and weighed as one, but only one, factor within a totality of the circumstances analysis. See, e.g., *In re Shelby,* No. 06–48745 (Bankr.E.D.Mich. July 25, 2007). If after considering all of the relevant circumstances, equitable considerations favor dismissing the chapter 7 case based upon the Debtor's ability to pay, it is within the court's discretion to do so. Artificially limiting the Court's examination of a debtor's financial circumstances to one factor and one factor alone, the debtor's ability to repay debts out of future earnings, is at odds with the totality of the circumstances inquiry mandated by Congress and with the message of *Krohn,* which itself observed that the ability to repay debts was "[a]mong the factors to be considered in deciding whether a debtor is needy. . . ." *Krohn* 886 F.2d at 126.

■ Whether the Debtors are sufficiently needy to justify the relief sought under chapter 7 is determined by an examination of the following non-exclusive factors: (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities. *In re Krohn,* 886 F.2d at 126–27. One consideration relevant to the first factor, whether the Debtor has the ability to repay debts, is whether the Debtors have sufficient disposable income to fund a hypothetical chapter 13 plan. *Behlke,* 358 F.3d at 435.

## 2. 401(k) Contributions As Reasonably Necessary Expenses

Disposable income is defined under the Bankruptcy Code as income received by the debtor which is not reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A)(i). Within the Sixth Circuit, courts have universally determined that voluntary retirement contributions are not reasonably necessary for the maintenance and support of a debtor and must be included in a disposable income analysis under § 707(b). *In re Glenn,* 345 B.R. 831, 836 (Bankr.N.D.Ohio 2006) (as a matter of law the debtor's voluntary 401(k) contribution was not a permissible deduction when determining the debtor's ability to pay in a § 707(b) action); *In re Keating,* 298 B.R. 104, 110 (Bankr.E.D.Mich.2003) (contributions a debtor makes to his 401(k) plan do not constitute funds necessary for support and must be included in disposable income for purposes of deciding the issue of substantial abuse); *In re Austin,* 299 B.R. 482,

486–87 (Bankr.E.D.Tenn.2003) (in the Sixth Circuit, retirement plan contributions constitute disposable income for purposes of a substantial abuse analysis); *See also Hebbring v. U.S. Trustee*, 463 F.3d 902, 906 (9th Cir.2006), in which the Court characterized the Sixth Circuit as having adopted a per se rule that voluntary contributions to retirement plans are never a reasonably necessary expense.

Likewise, numerous courts outside of this circuit have similarly concluded that retirement contributions must be considered when determining disposable income. *See, e.g., Anes v. Dehart (In re Anes)*, 195 F.3d 177, 180–81 (3d Cir.1999) (voluntary contributions to retirement plans are not reasonably necessary for a debtor's maintenance or support and must be made from disposable income); *In re Heffernan*, 242 B.R. 812, 818 (Bankr.D.Conn.1999) (there is an overwhelming consensus among bankruptcy courts that a debtor's voluntary 401(k) contributions are not reasonably necessary and must be included in debtor's disposable income).

A small but growing number of courts, however, opt for a case-by-case approach under which retirement contributions may be found reasonably necessary, or not, depending upon the unique circumstances of the debtors' situation. *See, New York City Employees' Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124, 129–30 (2d Cir.2001) (the bankruptcy court may consider any facts properly before the court in determining, on a case-by-case basis, whether pension contributions qualify as a reasonably necessary expense for the debtor). Some cases applying a case-by-case approach have concluded that contributions to a retirement fund were not necessary for the maintenance and support of the debtor. In *Hebbring v. U.S. Trustee*, the court eschewed a per se rule and held instead that it had the discretion to determine under the facts of the case whether retirement contributions were a reasonably necessary expense. *Hebbring*, 463 F.3d at 907. The debtor, a thirty-three year old woman with income of $49,000 per year, $6,289 in retirement savings, some equity in residential property and retirement contributions equaling 8% of gross income, was not permitted a deduction for retirement contributions. In *In re Vansickel*, 309 B.R. 189 (Bankr.E.D.Va.2004), the debtors made voluntary retirement contributions of $243.99 per month, equivalent to 3% of gross income, and retirement loan repayments in the amount of $470.47. The court disallowed the deduction for the voluntary contribution but allowed that of the loan repayment, ultimately concluding that the debtors' ability to repay was modest and the filing was not a substantial abuse of chapter 7.

Other courts under a totality of the circumstances inquiry have allowed a deduction for 401(k) contributions. In *In re King*, 308 B.R. 522 (Bankr.D.Kan.2004), the debtor was forty-seven years old with $75,000 in retirement savings and a $389.22 monthly 401(k) plan contribution, roughly 4.2% of gross monthly income. The court allowed the deduction, *id.* at 532, and found that the evidence did not support a finding of substantial abuse. In *In re Aiello*, 284 B.R. 756 (Bankr.E.D.N.Y. 2002), the debtor was not near retirement, had no dependents and had quadrupled his voluntary 401(k) contributions just prior to filing under chapter 7. The deduction for the 401(k) contribution was allowed but reduced from 27% to 15% of gross income. *Id.* at 762. The case was dismissed for abuse. In *In re Mills*, 246 B.R. 395 (Bankr.S.D.Cal.2000), the debtor was fifty-six years old with a balance of $9,000 in retirement savings and a monthly contribution of $302 per month, or 10% of his salary. The court allowed the deduction but dismissed the case for abuse.

Review of Sixth Circuit precedent begins with *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir.1995). In *Harshbarger*, the debtors filed a chapter 13 plan which purported to pay less than 100% to unsecured creditors while simultaneously excluding from disposable income monthly payroll deductions intended to repay a loan borrowed against the debtors' retirement account. The chapter 13 trustee objected to the plan, arguing that the payroll deductions constituted disposable income that should not have been excluded from the bankruptcy estate. Applying *de novo* review, the court affirmed the district court's decision to reject the plan, concluding that the plan was not confirmable because the loan repayment was not necessary for the maintenance or support of the debtors. *Id.* at 777. The court observed:

> In these circumstances, "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend."

*Id.* at 778 (citing *In re Jones*, 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991)).[2]

In *Behlke*, the Sixth Circuit extended the application of *Harshbarger* to apply not only to 401(k) loan repayments, but also to voluntary contributions to a 401(k) or other retirement plan. In *Behlke*, the debtors filed for chapter 7 relief and sought to deduct $460, or roughly 6% of gross income, in voluntary monthly contributions to the debtors' 401(k) plan. The court found that the debtors' voluntary 401(k) contributions were not reasonably necessary to the maintenance and support of the debtors or their dependent[s] and should be considered disposable income. *Behlke*, 358 F.3d at 436. Prior to reaching that conclusion, the court considered the bankruptcy court's findings of fact, observing that the debtors had accrued $48,200 in retirement savings, stock options of unknown future value and residential real property with a substantial amount of equity. The court concluded:

> [A]pplying *Harshbarger* **and** finding that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value, the bankruptcy court found that the monthly 401K contribution, which is equal to 6% of Mr. Behlke's gross income, should be included as disposable income for purposes of determining the debtors' ability to pay their creditors out of future earnings.
>
> We agree completely and find **no clear error** in the bankruptcy court's finding that the 401K contribution **in this case** was not reasonably necessary to the maintenance and support of the debtors or their dependent and that it should be included as disposable income.

*Id.* at 436 (emphasis added).

Although *Behlke* and *Harshbarger* have been broadly interpreted to require wholesale inclusion of 401(k) contributions in a disposable income analysis, this Court does not share that view. The *Behlke* court methodically set forth the applicable standards of review, observing that findings of fact were reviewed for clear error, while

---

**2.** With BAPCPA came the adoption of 11 U.S.C. § 1322(f) which provides that amounts required to repay loans from a 401(k) or other designated retirement plan shall not constitute disposable income under § 1325. *Compare Eisen v. Thompson*, 370 B.R. 762, 771 n. 14 (N.D.Ohio 2007) (section 1322(f) plainly overrules *Harshbarger*), *with In re Lenton*, 358 B.R. 651, 659 n. 17 (Bankr.E.D.Pa.2006) (§ 1322(f) does not make any finding that 401(k) loan payments are reasonably necessary, but simply represents Congress' decision to exclude them from the definition of disposable income under § 1325).

conclusions of law were reviewed *de novo*. The court then undertook an analysis of the bankruptcy court's findings of fact. Rather than adopt a per se rule requiring the inclusion of 401(k) contributions in disposable income, the court instead reviewed the reasonableness of the contributions against the circumstances of the debtors' financial situation and found no clear error in the bankruptcy court's decision. Voluntary contributions under those facts, where the debtors had accumulated a significant amount in retirement savings as well as personal and real property of some apparent future consequence, were not reasonably necessary for the maintenance and support of the debtors and thus could not be excluded from a disposable income calculation. Had the court believed that the application of *Harshbarger* required the inclusion of 401(k) contributions as a matter of law, or had the *Belhke* court intended to establish a per se rule against 401(k) contributions in a chapter 7 case, it would presumably have conducted *de novo* review or would have declined to engage in an analysis of the bankruptcy court's findings of fact.

■ This Court is persuaded that Sixth Circuit precedent does not require that in all instances voluntary contributions to a retirement plan are not necessary expenses for purposes of determining disposable income in a hypothetical chapter 13 plan. Instead, as is required by the plain language of § 707(b)(3) and this Court's interpretation of the meaning of Sixth Circuit precedent, the reasonableness of the Debtors' expenses, including 401(k) contributions, must be determined on a case-by-case basis looking at the totality of the Debtors' individual circumstances.

■ What is evident from *Behlke* is that the amount of the Debtors' existing retirement savings is relevant to the determination of whether voluntary retire-

ment contributions are necessary for the maintenance or support of the Debtor or a dependent. Other factors relevant to this fact-intensive inquiry may include: (1) age and time left until retirement; (2) level of yearly income; (3) overall budget; (4) amount of monthly contributions; (5) needs of any dependents; and (6) other constraints which make it likely that retirement contributions are reasonably necessary expenses for those debtors. *Hebbring v. U.S. Trustee*, 463 F.3d at 907 (citing *In re Taylor*, 243 F.3d 124, 129–30 (2d Cir.2001)).

■ In the present case, factors weighing in favor of the reasonableness and necessity of the contribution include (1) the Debtors are fifty-five years of age, (2) with minimal savings for retirement, and (3) no personal or real property of any significant value. Weighing against the deduction for the contribution is that (1) the 401(k) contribution was commenced only after the bankruptcy petition was filed, and then at a level of 12%, not extravagant but near the maximum contribution allowed, (2) Mr. Beckerman's 401(k) contributions have accumulated only $1,644.90 of the $7,036 in combined retirement savings, with the bulk of the retirement fund coming from Mrs. Beckerman, who will presumably continue to contribute to her plan, (3) the Debtors' employment is stable, and while Mr. Beckerman has experienced some health concerns there is no evidence that his health jeopardizes his current position, and (4) retirement, although of increasing concern, is not imminent and in all probability in today's work environment the Debtors' could, in some capacity, have upwards of ten or more years of productive work lives ahead of them.

On balance, in light of the vast inadequacy of the Debtors' retirement portfolio, coupled with their age and the fact that Mrs. Beckerman's contributions alone will

not sustain two people in retirement, the Court concludes that the monthly 401(k) contributions are reasonably necessary for the maintenance and support of the Debtors and may be excluded from disposable income. In *In re Ray*, 325 B.R. 193 (Bankr.E.D.Mich.2005), this Court addressed an issue similar to the one before the Court although the application and scope of *Behlke* was not at direct issue. This Court concluded that the mere fact that if the debtor eliminated monthly retirement contributions they would have the ability to repay a portion of their debts to creditors was not alone sufficient to warrant dismissal for abuse. The following was said about the debtor, who was fifty-three years old, two years from retirement and who suffered from serious potential future health complications:

> [T]he substantial abuse statute does not require that these Debtors completely strip themselves now of essentially their only remaining potential to build ... up for a relatively short two year period some additional savings to help support themselves and deal with the vagaries of life and health for quite possibly 25 years or more (given their ages)....

*In re Ray*, 325 B.R. 193, 197 (Bankr. E.D.Mich.2005). The same holds true for the Debtors today despite the fact that their retirement date is as yet unknown and their health is not in as precarious a situation. To deny the ability to contribute reasonable funds to a plan for retirement in this day and age when the Debtor is near retirement age and has no savings with which to support himself penalizes debtors "who must either self-fund their own retirement or place their future in the hands of the social welfare system." *In re King*, 308 B.R. at 531. "The decreased availability of defined benefit plans ... underscores the necessity of self-funded retirement planning." *Id.* The Court concludes that Mr. Beckerman's

monthly contribution of $469 to his 401(k) plan is reasonable and necessary and is not disposable income for the purposes of a hypothetical chapter 13 plan.

## B. Other Neediness Factors

Referring to factors other than the ability to fund a chapter 13 plan, the record in this case shows (1) there is no indication that relief could be obtained through private negotiations with creditors, and (2) the Court has no knowledge of whether state remedies exist which could ease the Debtors' financial straits. Weighing against the Debtors is the fact that they enjoy a stable source of future income. Whether the Debtors remain eligible for chapter 13 relief and whether the Debtors' expenses can be significantly reduced without depriving them of food, clothing and other necessities are discussed below.

### 1. Eligibility For Chapter 13 Relief

Debtors filed for chapter 13 relief on July 14, 2006. In January 2007, Debtors requested and the Court granted conversion of the case to chapter 7 pursuant to 11 U.S.C. § 1307. Debtors are eligible for chapter 13 relief pursuant to 11 U.S.C. § 109(e), and as witnessed by the fact that two months prior to conversion their chapter 13 plan was confirmed. Furthermore, Debtors have not received a discharge under either chapter which could affect and possibly prevent a future discharge under 11 U.S.C. § 1328(f). However, whether the Debtors are entitled to chapter 13 relief pursuant to 11 U.S.C. § 706 is the subject of some controversy.

Section 706 governs conversion of a chapter 7 case and provides:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12 or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.

Any waiver of the right to convert a case under this subsection is unenforceable.

.    .    .    .    .

(c) The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests or consents to such conversion.

11 U.S.C. § 706. Under § 706(a), conversion from chapter 7 to chapter 13 is authorized by right only if the case has not previously been converted under § 1307. As Debtors converted their case under § 1307 they appear to have lost that right. Cases are split on whether a liquidation case previously converted from chapter 13 may re-convert back to chapter 13 in the court's discretion. Cases holding that there is no right to re-convert to chapter 13 once a case has been converted to liquidation include *In re Banks*, 252 B.R. 399 (Bankr.E.D.Mich.2000); *In re Vitti*, 132 B.R. 229 (Bankr.D.Conn.1991); *In re Hanna*, 100 B.R. 591 (Bankr.M.D.Fla.1989); *Ghosh v. Fin. Fed. Sav. & Loan Ass'n (In re Ghosh)*, 38 B.R. 600 (Bankr.E.D.N.Y. 1984); *In re Richardson*, 43 B.R. 636 (Bankr.M.D.Fla.1984). Those cases not infrequently base their decision in part on the legislative history of the statute which refers to a one-time absolute right of conversion under § 706(a). The legislative comments to § 706 provide:

Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right.

.    .    .    .    .

Subsection (c) is part of the prohibition against involuntary chapter 13 cases, and prohibits the court from converting a case to chapter 13 without the debtor's consent.

In contrast, other cases have concluded that the court has discretion to permit reconversion and may do so dependent upon the facts of the individual case. Cases permitting re-conversion by way of court discretion include *In re Offer*, 2006 WL 995858 (Bankr.M.D.N.C. Feb.27, 2006); *In re Manouchehri*, 320 B.R. 880 (Bankr. N.D.Ohio 2004); *In re Masterson*, 141 B.R. 84 (Bankr.E.D.Pa.1992); *In re Johnson*, 116 B.R. 224 (Bankr.D.Idaho 1990); *In re Sensibaugh*, 9 B.R. 45 (Bankr. E.D.Va.1981); *In re Walker*, 77 B.R. 803 (Bankr.D.Nev.1987). According to a legal commentary:

A few courts have read [§ 706(c) ], and the absence of a specific authorization for a motion to convert to chapter 12 or chapter 13 when there is no absolute right to convert, to preclude reconversion to chapter 12 or chapter 13 after a case has been converted from one of those chapters to chapter 7. However, had Congress meant to bar such reconversions completely, it would not have used the language it used. Unlike section 706(a), which speaks of the debtor converting a case when the debtor has an absolute right to convert, subsection 706(c), like subsection 706(b), speaks of the court converting the case. Both sections 706(b) and 706(c) refer to a decision of the court, in its discretion, to permit conversion at the request of a party. Section 706(c) serves simply to limit who may request conversion to chapter 12 or chapter 13, permitting only the debtor to make such a request. If the court were not authorized to convert a case to chapter 13 in the first place, there would be no need for section 706(c). Therefore, the power of the court to convert a case to chapter 13 is

implicit in section 706(c), which limits that power.

Most courts have recognized that it would make little sense to deny the debtor any opportunity to convert back to chapter 12 or chapter 13 if the debtor decides an earlier conversion to chapter 7 was a mistake. While Congress did not give debtors an absolute right to reconvert, so that debtors cannot frustrate creditors by continually converting and reconverting, it did generally want to give debtors every opportunity to repay their debts if they chose.... The courts permitting reconversion have properly recognized that the decision whether to permit reconversion should rest in the sound discretion of the court based on what most inures to the benefit of the parties in interest. When no party objects to the reconversion it should normally be granted.

6 *Collier on Bankruptcy* ¶ 706.04, at 706–8 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev.2007).

When, as is the case here, it is the Court considering dismissal of the Debtors' case and subsequent re-conversion to chapter 13, with the Debtors' consent as required by statute, and not the Debtor seeking repeated conversions of their own accord, the Court adopts the view that it has the discretion to permit re-conversion if the facts so support. Accordingly, in this case, the Debtors remain eligible for chapter 13 relief.

### 2. Reduction of Expenses

■ A review of the Debtors' Schedules show that their expenses are inflated and that additional belt tightening is not out of the question. The Debtors' expenses are what they are in no small part because they are financially supporting their three adult children. While one of the Debtors' children has learning disabilities and may require some level of support from the

Debtors, the other two children are working and are capable of contributing to the household expenses or to their own expenses. Support from the parents will, or should for these children, end at some point in the not too distant future.

Debtors' projected expenses are premised entirely upon their moral obligation to support their children while they pursue a college education. While the Court will not go so far as to say that the Debtors should not provide any assistance to their children while they are in college, complete subsidy of the children, to the extent of paying for all food, clothing, housing and even cell phones, including contributions towards college tuition expenses, while they themselves are driven into bankruptcy is not reasonable or necessary. The Debtors' intentions to support their children are understandable, but in doing so they require their creditors, who receive nothing in the chapter 7 proceeding, to unwittingly bear that cost. That is not consistent with the inquiry before the Court. The children are capable of bearing some measure of the costs of their own expenses. *See In re Siemen,* 294 B.R. 276, 279 (Bankr.E.D.Mich.2003) (the Debtors' support of their twenty year old son, thirty-one year old daughter and two grandchildren was not justified in chapter 7 proceeding).

The UST argues that the Debtors' expenses can be reduced by a minimum of $150 for food, $50 for telephones, and $60 for contingency costs, leaving $260 per month available for payment of the Debtors' creditors, with more coming available as the Debtors reduce or eliminate their support of their children. Debtors' last Amended Schedule I shows a combined gross monthly income of $6,584.81. The national standard for food for a family of three with a gross income equivalent to that of the debtors is $754; for a family of

852

four $868; and for a family of five, $1,084.[3] Even if one child, say the twenty-four year old, paid for the costs of her own food, the Debtors would have an additional $232 per month with which to fund a plan. The Debtors' transportation costs are also inflated given the testimony that the children manage their own transportation costs and that up to the time of filing Debtors operated one vehicle and Mrs. Beckerman walked the one mile to work. Local transportation costs for operational costs only are $390 for one vehicle and $473 for two vehicles.[4] The Debtors budgeted expense for transportation is $650, exclusive of ownership and insurance costs. While comparison to the national and local standards is not required it does provide a benchmark from which to gauge the reasonableness of the Debtors' expenses. Furthermore, the $60 contingency fee is not reasonably necessary. Schedule J is a statement of current expenditures and should reflect actual expenses of the Debtors. 11 U.S.C. § 521(a)(1)(B)(ii).

The facts of this case indicate that (1) Debtors enjoy a stable source of future income, (2) they remain eligible for chapter 13 relief, and (3) they are capable of significantly reducing their expenses without depriving themselves of food, clothing, shelter or other necessities.

For the foregoing reasons, the UST's Motion to Dismiss pursuant to § 707(b) is granted unless, within 20 days from the entry of the order effectuating the Opinion, the Debtors convert to a chapter 13 proceeding. The UST shall present an appropriate order.

3. www.usdoj.gov/ust/eo/bapcpa/20060213/meanstesting.htm.

