66 F.3d 775
 34 Collier Bankr.Cas.2d 233, Bankr. L. Rep. P 76,643,
Pens. Plan Guide P 23915Z
In re Robert H. HARSHBARGER and Mary J. Harshbarger, Debtors.
Robert H. HARSHBARGER and Mary J. Harshbarger, Plaintiffs-Appellants,
v.
Frank M. PEES, Chapter 13 Trustee, Defendant-Appellee.
 No. 94-3090.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 10, 1995.
Decided Sept. 19, 1995.
 
 Todd G. Finneran (briefed), Wesley C. Emerson (argued and briefed), Columbus, OH, for plaintiffs-appellants.
 Robert J. Sidman (argued and briefed), Randall D. LaTour (briefed), Vorys, Sater, Seymour & Pease, Columbus, OH, for defendant-appellee.
 Before KEITH, KENNEDY, and SILER, Circuit Judges.
 KENNEDY, Circuit Judge.
 
 
 1
 Appellants Robert and Mary Harshbarger ("debtors") appeal the District Court's decision to uphold the dismissal of their voluntary Chapter 13 bankruptcy petition for failure to submit a plan that satisfied the requirements of 11 U.S.C. Sec. 1325. Their Chapter 13 plan deducted from disposable income monthly payments to repay monies borrowed from Mary Harshbarger's ERISA account. For the following reasons, we affirm.
 
 I.
 
 2
 Mary Harshbarger is a vested participant in an ERISA-qualified profit sharing account (the "ERISA account") maintained by her long-time employer, White Castle Systems, Inc. In 1985, Mrs. Harshbarger borrowed $6,400 from the ERISA account in order to put a down payment on a residence. This loan was to be repaid (and her full interest in the ERISA account restored) through monthly payroll deductions of $61.17. The ERISA account provides for a right of setoff, either in the future or immediately, if a participant fails to repay a loan.
 
 
 3
 In August of 1992, the Harshbargers filed for Chapter 13 bankruptcy. When they submitted their Chapter 13 plan (the "Plan"),[1] $3,855.54 remained to be paid on the loan against Mrs. Harshbarger's ERISA account. Debtors' Plan proposes to continue the $61.17 monthly payroll deductions and treat the ERISA-account loan as a separate class of unsecured debt that would be paid 100% " outside" of the Plan.[2] In essence, the Plan exempts $61.17 per month from the estate's disposable income. It proposes pro rata distribution of the funds included as disposable income to the remaining unsecured creditors, amounting to a dividend of approximately 40%.
 
 
 4
 The Trustee, Frank M. Pees, objected to the Plan, reasoning that under 11 U.S.C. Sec. 1325(b) the $61.17 is disposable income that must be evenly distributed among all unsecured creditors, not earmarked for reimbursement of the debtors' own ERISA account.
 
 
 5
 The Bankruptcy Court ruled in favor of the Trustee. The District Court affirmed, ruling that only assets actually in the ERISA account, not future contributions or repayments, can be excluded from the bankruptcy estate under 11 U.S.C. Sec. 541(c)(2). Alternatively, the District Court found the Plan to be flawed because debtors failed to establish that the loan against the ERISA account was an enforceable debt. See 11 U.S.C. Secs. 1322, 1325.
 
 II.
 
 6
 The central issue in this case is how debtors' Plan should treat payments on a loan taken against an ERISA-qualified profit sharing account.
 
 
 7
 Debtors argue that under 11 U.S.C. Sec. 541(c)(2) the $61.17 payroll deduction should be excluded from the bankruptcy estate because it is a payment to restore Mrs. Harshbarger's interest in her ERISA account. Debtors reason that ERISA, as "applicable nonbankruptcy law," excludes the repayments from the bankruptcy estate because failure to reimburse the plan 100% would trigger setoff against the account, causing "indirect alienation" of her pension benefits.[3]
 
 
 8
 In response, the Trustee argues that only funds actually in an ERISA-qualified account are excluded from the estate under Sec. 541(c)(2). The Trustee asserts that the payroll deductions at issue constitute repayments of a loan on the ERISA account that should have been included in the debtors' disposable income under 11 U.S.C. Sec. 1325(b).
 
 III.
 
 9
 In reviewing bankruptcy decisions, we review the District Court's conclusions of law de novo. In re Batie, 995 F.2d 85, 88 (6th Cir.1993).
 
 
 10
 In this case, a Chapter 13 Trustee objects to debtors' Plan, which proposes to pay less than 100% to their unsecured creditors. In these circumstances 11 U.S.C. Sec. 1325 governs. Section 1325(b) provides, in relevant part:
 
 
 11
 (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
 
 
 12
 * * *
 
 
 13
 (B) [T]he plan provides that all of the debtor's projected disposable income to be received in the three-year period ... will be applied to make payments under the plan.
 
 
 14
 (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended--
 
 
 15
 (A) For the maintenance or support of the debtor or a dependent of the debtor....
 
 
 16
 11 U.S.C. Sec. 1325(b) (emphasis added).
 
 
 17
 Debtors' Plan proposes to deduct $61.17 per month from the disposable income available to pay unsecured creditors so that Mrs. Harshbarger may restore her full interest in the ERISA account. This expenditure may represent prudent financial planning, but it is not necessary for the "maintenance or support" of the debtors. See In re Scott, 142 B.R. 126, 133 (Bankr.E.D.Va.1992). Accordingly, the District Court was correct in affirming the decision to reject the Plan.
 
 
 18
 Debtors' argument that 11 U.S.C. Sec. 541(c)(2) places the $61.17 monthly payroll deductions outside the reach of the bankruptcy estate is not well taken. Section 541(c)(2) excludes a debtor's beneficial interest in a trust that is subject to a restriction on transfer enforceable under "applicable nonbankruptcy law." It is clear that this exempts a debtor's beneficial interest in an ERISA-qualified account from the bankruptcy estate. Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Thus, the funds already in Mrs. Harshbarger's ERISA-qualified account, including the money she repaid prior to filing for bankruptcy, are not part of the bankruptcy estate. However, the money debtors wish to repay the ERISA account in the future is not similarly excluded. The $61.17 monthly payroll deductions are not funds already in the ERISA account. Debtors' Plan must treat these funds as part of the disposable income in the bankruptcy estate.
 
 
 19
 It is unfortunate that Mrs. Harshbarger's expected pension benefits may be diminished by a future setoff against the unpaid portion of her obligation to the ERISA-qualified account. However, this consideration does not alter the result under the bankruptcy laws. In these circumstances, "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." In re Jones, 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991). As we hold that the District Court was correct in upholding the decision to reject debtors' Plan based on Sec. 1325(b), it is unnecessary to reach the question of whether, under bankruptcy law, the loan taken against debtors' ERISA-qualified account was an enforceable debt.
 
 IV.
 
 20
 For the foregoing reasons we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 The actual plan at issue is the "Third Amended Chapter 13 Plan," filed on Dec. 1, 1992
 
 
 [2]
 The entire $61.17 monthly payroll deduction is devoted to loan repayment. Mrs. Harshbarger is no longer contributing money to the ERISA account
 
 
 [3]
 Debtors argue as a threshold matter that the Trustee's objection to the Plan was improperly before the Bankruptcy Court because it constituted the unauthorized practice of law by the Trustee. However, debtors did not raise this argument during the bankruptcy proceedings and the District Court refused to address it for that reason
 Debtors now argue that it was unnecessary for them to raise the issue below and urge this court to consider the argument on its merits. We decline to do so and instead follow the long-standing general rule of this circuit that "appellate courts are not to address issues not raised for the first time in the trial court." In re Eagle-Picher Indus., 963 F.2d 855, 862-3 (6th Cir.1992).