**In re Vanessa HERNDON, Debtor.**

No. 02–62197–WHB.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

March 17, 2003.

Kevin C. Calhoun, Lathrup Village, MI, for Oakland County Treasurer.

Richardo I. Kilpatrick, Detroit, MI, for Wayne County Employee's Retirement Fund.

William R. Orlow, Pleasant Ridge, MI, for Vanessa Herndon.

Karen L. Rowse–Oberle, St. Clair Shores, MI, for Public Service Credit Union.

## MEMORANDUM OPINION ON WAYNE COUNTY EMPLOYEES' RETIREMENT FUND'S MOTION TO MODIFY THE AUTOMATIC STAY

WILLIAM H. BROWN, Bankruptcy Judge.

Wayne County Employees' Retirement Fund ("Retirement Fund") seeks relief from the automatic stay provisions of 11 U.S.C. § 362 in order to offset funds on deposit in Ms. Herndon's ("the Debtor's") retirement account, and also in order to notify the Internal Revenue Service and other taxing authorities of the Debtor's receipt of a distribution from the account. The Debtor opposes the motion. Upon consideration of the undisputed facts, statements of counsel, briefs submitted by the parties, relevant case law, and the entire record in this cause, the Court grants the motion for relief from the automatic stay. The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## ISSUE

The issue presented in this contested matter is whether an offset of the Debtor's retirement account and notification to the taxing authorities of a taxable distribution to the Debtor are acts falling within the purview of the automatic stay, or whether modification of the stay is appropriate.

## FACTUAL SUMMARY

The material facts are undisputed. The Retirement Fund administers retirement plans for participating employees of Wayne County, Michigan, including the Debtor. The Retirement Fund is classified as an ERISA-qualified retirement account. *See* Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. On May 31, 2000, the Debtor obtained a loan against her account with the Retirement Fund in the amount of $13,811, and then obtained a second, similar loan in the amount of $25,687 from the Retirement Fund on May 1, 2002. Under the terms of the loan agreement, the Debtor was to repay the loans through bi-weekly payroll deductions from her earnings as a County employee. Balances of $8,301.35 and $24,140.88 remain outstanding.

The loan disclosure statements that were provided to the Debtor upon her acceptance of the loan stated: "You are giving a security interest in your vested account balance under the Plan." The note further contained an acknowledgment stating:

> The unpaid amount of this loan, plus any accrued but unpaid interest, shall be a lien against and secured by an amount as set forth by the Plan, but no more than 50% of my vested account balance in the Plan (the security) on the date the loan is approved (though the percentage may rise above 50% after the loan is approved if the amount of my account balance is reduced). All or part of the

security may be deducted from my vested account balance, when permitted under the terms of the Plan, that is covered by this lien.

Mot. to Modify the Automatic Stay, Ex. B. Under the terms of the plan referred to in the acknowledgment, upon default the Retirement Fund may offset the loan balance against the plan participant's remaining account balance. In addition, in the event of a default in plan loan payments, the Retirement Fund asserts that it is required to notify the Internal Revenue Service and any other pertinent taxing authorities that a taxable, premature distribution of retirement income to the Debtor has occurred. Upon default of a plan loan, a taxable distribution is deemed to have occurred, as the loan is no longer substantially amortized and therefore does not meet the requirements of § 72(p)(2) of the Internal Revenue Code. *See* 26 U.S.C. § 72(p)(2).

The Debtor filed her petition for relief under Chapter 13 of the Bankruptcy Code on September 24, 2002, and defaulted on her loan payments soon thereafter. The Retirement Fund filed its motion for relief from the automatic stay to enable it to offset the loan balances from the funds remaining in the Debtor's retirement account and to report the early distribution of retirement funds to the taxing authorities. In support of its motion, the Retirement Fund argues that the Debtor's interest in her retirement account is not part of the bankruptcy estate and is therefore not subject to the protection of the automatic stay. Further, the Retirement Fund argues that the Debtor's obligation on the loans does not constitute a claim dischargeable in bankruptcy and subject to stay protection.

The Debtor concedes that the Retirement Fund's recourse for nonpayment of the loans is an offset against the Debtor's future retirement benefits, yet alleges that, because the Debtor merely received an early distribution of her own retirement funds, there will be no detrimental effect on the Retirement Fund if it fails to offset the loan amounts owing, and suggests that "[w]hen Debtor completes her Chapter 13 Plan, she can simply continue making her loan payments...." Debtor's Br. In Supp. of Her Resp. to Mot. for Relief from the Automatic Stay at 5.

## DISCUSSION

■ The Retirement Fund first asserts that the funds in the Debtor's retirement account that are subject to its contractual right of offset are excluded from the bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code and applicable Sixth Circuit authority, and are therefore not within the protection of the automatic stay. Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the Debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The Debtor's retirement plan presumably contains such a restriction on transfer.

The seminal Sixth Circuit case addressing this issue is *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777 (6th Cir. 1995). The *Harshbarger* court was faced with the issue of whether a Chapter 13 Debtor may continue to make payments on a retirement fund loan while paying unsecured creditors less than 100%. The court determined that such payments would violate the disposable income test for plan confirmation under § 1325(b), and also determined that:

> It is clear that [§ 541(c)(2)] exempts a Debtor's beneficial interest in an ERISA-qualified account from the bankruptcy estate.... Thus, the funds already in [the Debtor's] ERISA-qualified account, including the money she repaid

prior to filing for bankruptcy, are not part of the bankruptcy estate.... It is unfortunate that [the Debtor's] expected pension benefits may be diminished by a future setoff against the unpaid portion of her obligation to the ERISA-qualified account. However, this consideration does not alter the result under the bankruptcy laws.

*Id.* at 777–78 (citing *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)). Section 362(a)(3) of the Bankruptcy Code operates as a stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Because the funds remaining in the Debtor's retirement account are not included in property of the estate, they are without the protection of the automatic stay and therefore remain subject to the Retirement Fund's contractual right to offset.

■ In addition, the Retirement Fund asserts that the loan taken against the Debtor's retirement account is not a dischargeable debt giving rise to a claim against the Debtor's bankruptcy estate, and therefore the automatic stay is ineffective against the Retirement Fund's right to offset. The Sixth Circuit addressed a similar issue in *Mullen v. United States (In re Mullen)*, 696 F.2d 470, 472 (6th Cir.1983). In the *Mullen* case, the circuit court relied on the legislative history of § 101 of the Bankruptcy Code to determine that a loan against a retirement fund does not create a debtor-creditor relationship between the parties and that the automatic stay should not be applied to the Debtor's obligation to repay. The legislative history cited by the *Mullen* court provides:

"Debt" is defined in paragraph (11) as a liability on a claim. The terms are coextensive: a creditor has a "claim" against the Debtor; the Debtor owes a "debt" to the creditor. This definition of "debt" and the definition of "claim" on which it is based, proposed 11 U.S.C. § 101(4), will not include a transaction such as a policy loan on an insurance policy. Under that kind of transaction, the Debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for set-off against any benefits that become payable under the policy. As such, the loan will not be a claim (it is not a right to payment) that the company can assert against the estate; nor will the Debtor's obligation be a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. §§ 523 or 524.

*Id.*, quoting H.R. No. 595, 95th Cong., 2d Sess. 310, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6267. The *Mullen* court then went on to find the retirement fund loan transaction analogous to a loan on an insurance policy and stated that "[t]his is the precise transaction contemplated by the legislative history of subsection 101(11)." *In re Mullen*, 696 F.2d at 472. Other courts have followed this reasoning and determined that an advance from a retirement account does not create a dischargeable debt. *See New York City Employees' Retirement System v. Villarie (In re Villarie)*, 648 F.2d 810 (2d Cir.1981). *See also In re Fulton*, 211 B.R. 247, 264 (Bankr.S.D.Ohio 1997)(retirement plans found not to possess a claim against debtors; thus, funds borrowed by debtors from their own pension accounts were not debts within the meaning of bankruptcy laws); *In re Esquivel*, 239 B.R. 146, 152 (Bankr.E.D.Mich. 1999)(clear consensus that an individual's prepetition borrowing from retirement account does not give rise to a "claim" or a "debt" under the Bankruptcy Code). Based on these authorities, the loan transaction at issue in this case is outside the purview of the automatic stay.

The Debtor acknowledges that, under controlling case law in this Circuit, she cannot make payments on her retirement loans through her Chapter 13 plan because she is paying her unsecured creditors only a 10% dividend. *See In re Harshbarger,* 66 F.3d at 778 (" 'it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend' ") (quoting *In re Jones,* 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991)). She proposes, however, to resume payments on the loans after completion of her Chapter 13 plan in an attempt to avoid the tax consequences of her early retirement account withdrawal. Although the tax consequences to the Debtor are unfortunate, as the Retirement Fund points out:

> It would be inequitable to permit the Debtor to force the [Fund] to wait until the conclusion of her Chapter 13 case to reduce the amount of future benefits payable to her as a result of the early distributions. Moreover, the Debtor should not be permitted to use the Bankruptcy Code as a shield against unfavorable tax consequences resulting from the early retirement plan distributions while at the same time forcing the [Fund] to remain out of compliance with IRS reporting requirements until the conclusion of her Bankruptcy case. The [a]utomatic [s]tay was intended as protection from collection actions, not tax consequences of which the Debtor was aware at the time of filing and could have addressed in her Plan.

Retirement Fund's Br. in Reply at 7. The Retirement Fund's argument is well taken. "The purpose of the Bankruptcy Code is to provide a fresh start, not a fine finish." *In re Fulton,* 211 B.R. at 262 (citing *In re Jones,* 138 B.R. at 539).

## CONCLUSION

For the reasons set forth above, although the automatic stay does not prohibit the Retirement Fund's offset, its motion for modification of the automatic stay should be granted in order to make it clear that it is entitled to offset the loan balances from the Debtor's existing retirement account and to provide notification of the distributions to the appropriate taxing authorities. The Court will enter an Order consistent with this opinion.