**In re: Kevin/Roberta GLENN, Debtors.**

**No. 05–35101.**

United States Bankruptcy Court,
N.D. Ohio.

Feb. 7, 2006.

834

Gordon R. Barry, Toledo, OH, for debtors.

Elizabeth A. Vaughan, Toledo, OH, trustee.

Maria D. Giannirakis, Cleveland, OH, Office of the U.S. Trustee.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This matter comes before the Court after a Hearing on the Motion brought by the United States Trustee to Dismiss the Debtors' Case pursuant to 11 U.S.C. § 707(b). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly review the evidence and applicable law. The Court has now had this opportunity and finds, for the reasons herein stated, that the weight of the evidence supports the Motion of the United States Trustee.

### FACTS

The Debtors, Kevin and Roberta Glenn (hereinafter referred to collectively as the "Debtors"), have sought relief under Chapter 7 of the United States Bankruptcy Code. At the time they filed their petition in bankruptcy, both Mr. and Mrs. Glenn were approximately 50 years of age. They have two adult children, neither of whom lives at home.

In filing their petition, the Debtors set forth $425,110.98 in total liabilities. Of this amount, $350,707.69 comprised unsecured nonpriority claims, inclusive of $32,521.00 for two auto leases. Set against this, the Debtors listed the total value of their assets at $136,519.00, the source of which was mainly derived from two components: a residence valued at $95,000.00; and Mr. Glenn's interest in a 401(k) worth $37,000.00.

For the past 27 years, Mr. Glenn has been a truck driver for the same employer. Mr. Glenn's present monthly salary is $6,162.87. Besides deductions for taxes and insurance, Mr. Glenn set forth two additional deductions from his monthly salary: $61.62 for a 401(k) contribution; and $488.55 for the repayment of a 401(k) loan. After accounting for all deductions, Mr. Glenn set forth a net monthly take-home pay of $3,644.26.

The Co-debtor, Mrs. Glenn, is presently employed as an office manager, a position she has held for two years. Mrs. Glenn set forth a gross monthly salary of $3,813.33, which, after deducting for taxes, provides her with a net monthly salary of $2,979.17. In all then, the Debtors set forth in their petition $6,623.43 per month in net earnings.

Against their available monthly salary, the Debtors claimed in their bankruptcy petition $6,667.66 in monthly expenses. These monthly expenses included: $950.00 for food; $350.00 for pet care; a first and second mortgage payment of $756.01; and $1,042.47 for two auto leases. The Debtors also set forth two additional expenses for which a further explanation was provided: the allocation of $1,146.06 for the payment on a mortgage, but to which the Debtors is an unsecured obligation; and $402.00 for miscellaneous taxes.

As to the mortgage payment, the Debtors explained that Mr. Glenn's mother co-signed on a loan in the amount of $168,000.00, pledging her home as security. With regards to the taxes, it was explained that this expense stems from periodic payments that are being made to address tax liabilities incurred in connection with Mr. Glenn's 401(k) loan.

### DISCUSSION

The Motion of the United States to Dismiss is brought pursuant to 11 U.S.C. § 707(b) which provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.

As a determination of dismissal under this section directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

■ Section 707(b) contains three overall elements: (1) the debtor must be an individual; (2) the debts must be primarily consumer debts; and (3) granting relief to the debtor under Chapter 7 would be a "substantial abuse." As it regards the applicability of these elements, § 707(b) provides that "[t]here shall be a presumption in favor of granting the relief requested by the debtor." At the Hearing held in this matter, the applicability of the first two elements was not controverted, with the arguments of the Parties focused solely on the third element of § 707(b): the existence of "substantial abuse."

■ Section 707(b) was added by the Congress of the United States in 1984 in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid paying their obligations. To this end, § 707(b) seeks to limit the use of the bankruptcy process to only those debtors truly in need of relief, thereby helping to preserve the integrity of the process. *See, e.g., In re Duncan,* 201 B.R. 889 (Bankr.W.D.Pa.1996). With this aim in mind, the Sixth Circuit Court of Appeals, in the case of *In re Krohn,* first addressed the element of "substantial abuse" under § 707(b), holding that it may "be predicated upon either a lack of honesty or want of need." 886 F.2d 123, 126 (6th Cir.1989). Later, in the case of *Behlke v. Eisen (In re Behlke),* the Sixth Circuit clarified this holding, making it clear that a lack of both "honesty" and "need" would constitute separate and independent sources for the dismissal of a case under § 707(b). 358 F.3d 429, 434–35 (6th Cir.2004). In this matter, the UST predicates its position for dismissal entirely on the latter ground: the Debtors' lack of "need" for Chapter 7 relief.

■ The purpose of Chapter 7 is to give the truly needy debtor a fresh start, not to give those who can afford to meet their obligations a head start. *In re Jarrell,* 189 B.R. 374, 377 (Bankr.M.D.N.C. 1995). To this end, the Court in *In re Krohn* held that a determination of "need" is made by looking to whether truly the debtor's "financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." 886 F.2d at 126. Of particular importance in this respect is whether a debtor has the ability to "repay his debts out of future earnings," with the Court *In re Krohn* then going on to state, "[t]hat factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease." *Id.*

■ When looking to a debtor's ability to repay his debts out of future earnings, the question normally asked is whether the debtor has the ability to fund a Chapter 13 plan of reorganization. *Accord In re Behlke,* 358 F.3d at 435 ("One way courts determine a debtor's ability to pay is to evaluate whether there would be sufficient

'disposable income' to fund a Chapter 13 plan."). And when compared to the "honesty" component of the § 707(b) test, this analysis is inherently more objective: one simply takes the amount of "disposable income" a debtor has available and divides it by the plan length, between three and five years.

For purposes of this inquiry, that definition of "disposable income" as set forth in Chapter 13 of the Bankruptcy Code is utilized. *In re Behlke*, 358 F.3d at 435; *In re Pier*, 310 B.R. at 353. Therein, "disposable income" is defined as that "which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ...[.]" 11 U.S.C. § 1325(b)(2). When this formula is then applied, the Debtors maintain that they are deserving of the relief provided by Chapter 7 of the Bankruptcy Code because their household budget generates no "disposable income" which could be utilized to pay their unsecured debts; as set forth in their petition, the Debtors budget shows a slight monthly shortfall, with their net-monthly income of $6,623,43 not quite keeping pace with the $6,667,66 in necessary, monthly expenditures claimed by the Debtors.

It is well-established, however, that this Court is not required to accept at face value a debtor's enumerated income and expense figures; to the contrary, a bankruptcy court is under a duty to conduct its own independent inquiry into the propriety of such figures. *In re Pier*, 310 B.R. at 354; *In re Mills*, 246 B.R. 395, 400 (Bankr. S.D.Cal.2000). In conducting such an examination in this case, the Court finds that three of the itemized expenses submitted by the Debtors are not legally permissible when defending against a § 707(b) action.

First, as a matter of law, neither Mr. Glenn's 401(k) contribution of $61.62,

nor his $488.55 monthly expenditure to repay a loan on this account are allowable expenses when defending against a § 707(b) action. The fact, as the Debtors argue, that they may have used the loan to pay unsecured debts is immaterial. When looking to a debtor's "need" in a § 707(b) action, the Sixth Circuit Court of Appeals has set forth the precedent that, "a debtor's voluntary remuneration to a retirement account, whether by contribution or in the repayment of a loan, cannot be excluded from a debtor's 'disposable income.'" *In re Shelly Marie Dile*, Case No. 05–30708, *citing Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir. 1995), and *In re Behlke*, supra. The reasoning for this is straightforward: "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *In re Behlke*, 358 F.3d at 435, *citing In re Harshbarger*, 66 F.3d at 778.

Also as a matter of law, the Debtors will not be permitted to allocate as a "reasonably necessary expense" the monthly payment they make on the mortgage obligation encumbering the residence of Mr. Glenn's mother, but which against the Debtors is an unsecured debt. It is a basic facet of bankruptcy law that similarly situated creditors are entitled to be treated equally. *Pension Benefit Guar. Corp. v. Belfance (In re CSC Indus., Inc.)*, 232 F.3d 505, 508 (6th Cir.2000) ("[A] fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally."). Among other things, this means that similarly situated creditors involved in a debtor's Chapter 7 bankruptcy are entitled to share in a *pro rata* distribution of estate assets unless otherwise pro-

vided by the Code's priority scheme. *See* 11 U.S.C. §§ 507 and 726.

The Debtors, however, seek to skew this principle by devoting a significant amount of their income, $1,146.06 per month, to the payment of just one unsecured debt which would otherwise be discharged in conjuncture with those other similarly situated unsecured obligations of the Debtors. While nothing prevents a debtor from paying an otherwise dischargeable debt with postpetition assets, as the Debtors are proposing, the right of a debtor to use the bankruptcy process to secrete a stream of income from the general body of creditors is not limitless—ergo § 707(b). *See also* 11 U.S.C. § 524(c)/(f). And although no bright line exists as to the amount of income that a debtor may devote to one or a limited class of creditors without running afoul with the Code's equality scheme, the line has been well crossed in this particular matter;[1] in a garden-variety consumer case, such as that here, allowing the Debtors to pay one unsecured creditor, to the detriment of all the others, a claim of approximately $150,000.00 at the rate of more than $1,000.00 per month would serve to all but negate the Code's equality scheme.

This is not to say that the Court is unsympathetic to the Debtors' predicament. The mortgage obligation presently being paid by the Debtors encumbers the residence of Mr. Glenn's 77 year-old mother and, from what little evidence this Court has, she does not have the means to fully assume the obligation. Her residence will therefore be placed in jeopardy if the Debtors are unable to pay the obligation—a task undoubtably made more difficult, and perhaps impossible if the income now devoted by the Debtors to pay the mortgage obligation must instead be shared equally among all of their unsecured creditors.

■ However, it is this Court's sworn duty to do equal justice to all parties, not just one. 28 U.S.C. § 453.[2] *See also In re Pittsburgh Corning Corp.*, 255 B.R. 162, 170 (Bankr.W.D.Pa.2000). Accordingly, while the Court appreciates the gravity of the situation, it is not this Court's function to extract parties, including Mr. Glenn's mother, from the consequences of their actions. In this way, the Court finds it hard to believe, and no evidence was presented to the contrary, that Mr. Glenn's mother was not fully cognizant of the substantial risk she was assuming when she pledged her house as collateral for a loan in the amount of $168,000.00.

■ As a legal matter therefore, the approximately $1,700.00 in monthly expenditures the Debtors set forth relating to Mr. Glenn's 401(k) account and his mother's mortgage cannot be viewed as "reasonably necessary" expenditures under § 707(b). Therefore, with the budget originally submitted by the Debtors showing a shortfall of just under $100.00, it would be fair to allocate to the Debtors a total of

---

1. *See In re Praleikas*, 248 B.R. 140, 145 (Bankr.W.D.Mo.2000) (disallowing $154.00 loan payment to debtor's parents); *In the Matter of Dubberke*, 119 B.R. 677, 681 (Bankr. S.D.Iowa 1990) (debtor's desire to repay only certain creditors is a factor to be considered in determining substantial abuse).

2. This section provides:
   Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, _____, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____ under the Constitution and laws of the United States. So help me God."

$1,600.00 of "disposable income" for purposes of this § 707(b) analysis.

To be sure, with the Debtors having $350,707.69 in total unsecured debt, there is no realistic way that devoting $1,600.00 would enable them to fully pay their obligations through the bankruptcy process. Rather, at best the Debtors could formulate a Chapter 13 repayment plan of slightly under 30%: $57,600.00 could be paid in plan over three years; $96,000.00 could be made available to pay creditors over a five-year plan. Yet, this does not mean, as the Debtors argue, that they are entitled to Chapter 7 relief.

■■■ As previously set forth, bankruptcy is meant to give debtors a fresh-start, not a head start. As also stated, Chapter 7 is not a device to be used by a debtor to secrete a meaningful stream of income to the detriment of their general unsecured creditor body. As a result, while the ability of a debtor to fund a high percentage Chapter 13 plan is an important consideration in any § 707(b) need's-based analysis, the converse is not necessarily true; a low payment percentage may still show a lack of "need" where, as here, there exists substantial funds for distribution. *In re Behlke*, 358 F.3d at 435. As a policy matter, to hold otherwise would reward debtors for having more debt, rather than less. *In re McLaughlin*, 305 B.R. 505, 508 (Bankr.W.D.Mo.2004). *See also In re Praleikas*, 248 B.R. 140 (substantial abuse found where debtor could formulate 20% plan over three years). Even this aside, the 30% repayment calculation is better characterized as a floor rather than a ceiling.

The 30% repayment figure is calculated on an unsecured-debt burden of $350,707.69, as taken from the Debtors' bankruptcy schedules. But included in this debt figure is a $32,521.00 balance owed on two auto leases, which the Debt-

ors intend to reaffirm, and whose repayment was already factored into the Debtors' budgeted monthly expenses. For purposes of determining a Chapter 13 plan's distribution percentage, however, this is a *non sequitur:* one may not claim insufficient funds to pay a debt by subtracting from their available funds money which is already being allocated to pay that very debt. Instead, so as to provide a proper accounting, the Debtors may claim either their expense to pay the auto leases or the debt owed on the auto leases, but not both.

■■■ The 30% repayment figure is also based upon certain monthly expenditures claimed by the Debtors which, in one form or another, cannot be categorized as "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ..." Especially noticeable, the Debtors budgeted $950.00 per month for food. In the absence of a viable explanation, this is *a priori* excessive for two people with no dependents.

In response, the Debtors testified that much of this expense stems from Mr. Glenn's job as a truck driver which requires that he eat out while on the road. In this regard, Mr. Glenn pointed out that he is afforded a $30.00 per day food allowance (included in his salary) while on the road. The difficulty, however, the Court has with this explanation is not that Mr. Glenn may need to incur some additional expenses while on the road, but that it does not show any sacrifice on his part.

■■■ The "disposable income" test envisions that a debtor will put forth a substantial effort to repay his or her debts. S.Rep. No. 65, 98th Cong. 1st Sess. 22 (1983). While this does not require that a debtor live a spartan existence, and sustain themselves on bread alone, it is expected that a debtor will make some sacrifices in

their prepetition consumption level, especially where that consumption level played a major part in the deterioration of the debtor's financial affairs. *In re Gonzales,* 157 B.R. 604, 608 (Bankr.E.D.Mich.1993); *In re Butler,* 277 B.R. 917, 920 (Bankr. N.D.Iowa 2002). At the very least, a debtor will not be permitted to spend on luxuries. *See, e.g., In re Daniel,* 260 B.R. 763, 768 (Bankr.E.D.Va.2001). As stated succinctly by another court, a debtor "cannot expect to 'go first class' when 'coach' is available." *In re Kitson,* 65 B.R. 615, 621 (Bankr.E.D.N.C.1986).

Yet, when looked at in this light, all the Court sees is Mr. Glenn's expectation that his creditors should pay for what is, albeit the convenience of having his meals prepared on the road, but which cannot be considered a necessity. Surely with just a little resourcefulness, a person in Mr. Glenn's financial position could find ways to have some meals prepared in advance so as to save on a part of the expense of eating out all the time. If cut just in half, the Debtors' budgeted monthly food expense could be reduced by $200.00 or more. In a similar way, a couple of other expenditures set forth by the Debtors give this Court occasion for pause.

First, the Debtors have budgeted $350.00 for pet care, with Mrs. Glenn describing her pets as her children. But in this regard, the Court must agree with following statement made in the *Matter of Wyant,* where the court lowered the debtor's budgeted monthly expense for animal care from $175.00 to $100.00:

> It is commendable that the debtor is willing to care for these animals and to attend to their feed and medical needs. On the other hand, this is a bankruptcy case in which the debtor is seeking to be discharged from his obligations to pay creditors. As between the debtor's elderly horses and dogs and his creditors,

> I think that the creditors should be paid first. The proposed expenditures on these animals are excessive, unreasonable, and not necessary for the maintenance or support of the debtor or his dependents.

217 B.R. 585, 588 (Bankr.D.Neb.1998). Second, the Debtors' budgeted expense of $402.00 per month for taxes does not appear proper as the evidence tended to show that, while the expense is currently necessary, its continued defrayal from the Debtors' monthly budget will not be long in duration.

Taken all together then, the forgoing analysis shows that, not only do the Debtors have at least $1,600.00 per month in "disposable income" at their disposal to pay their unsecured debts, but that the Debtors' monthly budget has additional flexibility. As a result, the Debtors would, under a Chapter 13 plan of reorganization, have at their disposal the means by which to make a meaningful remuneration on their unsecured debts. In following therefore the precedent set forth by the Sixth Circuit Court of Appeals in both *Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004) and *Harshbarger v. Pees (In re Harshbarger),* 66 F.3d 775 (6th Cir.1995), the Court finds that the Debtors, at this time, lack the "need" for relief under Chapter 7 of the Bankruptcy Code. Consequently, for purposes of § 707(b), granting the Debtors relief under Chapter 7 of the Code would constitute a "substantial abuse."

In the interest of equity, however, the Debtors will be afforded the opportunity to convert their case to one under Chapter 13 of the Code. 11 U.S.C. § 105(a). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision. .

Accordingly, it is

***ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b) if, at the open of business on February 17, 2006, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b), be, and is hereby, GRANTED.