RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

JOHN S. PENFOUND; JILL L. PENFOUND,

*Debtors.*

─────────────────────────────────────

JOHN S. PENFOUND; JILL L. PENFOUND,

*Appellants,*

*v.*

DAVID W. RUSKIN, Chapter 13 Trustee,

*Appellee.*

No. 19-2200

────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit;
No. 2:18-cv-13333—Avern Cohn, District Judge.

United States Bankruptcy Court for the Eastern District of Michigan at Detroit;
No. 2:18-bk-48940—Marci B. McIvor, Judge.

Decided and Filed:  August 10, 2021

Before:  GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.

────────────────

## COUNSEL

────────────────

**ON BRIEF:**  Aaron J. Scheinfield, GOLDSTEIN, BERSHAD & FRIED, P.C., Southfield, Michigan, for Appellants.  Stuart A. Gold, GOLD, LANGE, MAJOROS & SMALARZ, P.C., Southfield, Michigan, for Appellee.

────────────────

## OPINION

────────────────

LARSEN, Circuit Judge.  In *Davis v. Helbling* (*In re Davis*), this court held that when a Chapter 13 debtor has regularly contributed to his 401(k) in the months leading up to his petition

for bankruptcy, he may exclude that recurring amount from the calculation of his "projected disposable income." *See* 960 F.3d 346, 355–57 (6th Cir. 2020).  This case presents a twist to that fact pattern.  What if a debtor has historically contributed to a 401(k) plan, but was unable to make further contributions in the months leading up to bankruptcy?  John and Jill Penfound claim that such a track record should permit them to shield voluntary post-petition contributions from the reach of their creditors.  Because neither the statute nor our caselaw supports the Penfounds' position, we AFFIRM the judgment below.

I.

Between 1993 and 2017, John Penfound worked for a company that provided its employees with a 401(k) plan.  For much of his tenure, Penfound voluntarily contributed a portion of his wages to the plan.  In August 2017, Penfound transitioned to a new company, Protodesign, Inc.  Unlike his previous employer, Protodesign did not offer a 401(k) plan.  So Penfound was unable to make further contributions to his retirement account.

Penfound's time with Protodesign was short-lived.  He left the company in March 2018.  And, on May 7, 2018, Penfound started working for a third company, Laird Technologies, Inc.  Laird offered a 401(k) plan, and Penfound eventually resumed making contributions to his retirement account.  However, the record on appeal is silent as to the exact date on which Penfound began making these payments.

On June 22, 2018, Penfound and his wife, Jill, filed for Chapter 13 bankruptcy.  As part of their petition, the Penfounds sought to deduct $1,375.01 per month from their disposable income as voluntary contributions to John's 401(k) retirement plan.  The Trustee objected to the exclusion.  And the bankruptcy court—relying on dictum from our decision in *Seafort v. Burden* (*In re Seafort*), 669 F.3d 662 (6th Cir. 2012)—agreed that the Penfounds could "not exclude their voluntary contributions . . . from the calculation of disposable income."  While reserving their right to appeal, the Penfounds agreed to confirm their repayment plan, subject to a monthly payment increase that would reflect the bankruptcy court's ruling.

The Penfounds then appealed to the district court.  The district court affirmed, likewise reading our decision in *Seafort* as establishing a blanket rule that all "voluntary post-petition

contributions to a 401(k) account are part of disposable income," such that they cannot be shielded from creditors.  This appeal followed.

The parties agreed to hold briefing in abeyance pending this court's decision in *Davis*, 960 F.3d 346.  In that case, we held that 11 U.S.C. § 541(b)(7) "is best read to exclude from disposable income a debtor's post-petition monthly 401(k) contributions so long as those contributions were regularly withheld from the debtor's wages prior to her bankruptcy."  *Id.* at 357.  Accordingly, the debtor—who had made consistent contributions of $220.66 "for at least six months prior to her bankruptcy"—was permitted to exclude that recurring amount from her disposable income.  *Id.*  In this case, the Penfounds concede that John made no contributions "within the six (6) months pre-petition as there were no retirement accounts available with his employer during that time period."  But they ask us to "broaden" and "expand" *Davis*'s ruling to account for John's "long, historical track record of voluntary retirement contributions" and the fact that Protodesign's lack of a 401(k) plan constituted a circumstance "outside [his] control."

## II.

We begin with some legal background.  "Chapter 13 of the Bankruptcy Code provides bankruptcy protection to 'individual[s] with regular income' whose debts fall within statutory limits."  *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (alteration in original) (quoting 11 U.S.C. § 101(30)).  Its principal benefit is that debtors may "obtain some relief from their debts while retaining their property."  *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015); *see* 11 U.S.C. § 1327(b).  But in order to receive such protection, Chapter 13 debtors "must agree to a court-approved plan under which they pay creditors out of their future income," *Lanning*, 560 U.S. at 508; *see* 11 U.S.C. § 1322(a), for a period of up to five years, *see* 11 U.S.C. § 1322(d).  A debtor is initially responsible for proposing this repayment plan.  *Id.* § 1321.  But upon objection, the bankruptcy court "may not approve the plan unless" it either:  (a) proposes full satisfaction of unsecured claims, or (b) "provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors."  *Id.* § 1325(b)(1).

Generally speaking, then, a debtor must commit all of his "projected disposable income" to his creditors for a fixed period of time.  The code does not explicitly define "projected

disposable income." But it defines "disposable income" as the debtor's "current monthly income . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor." *Id.* § 1325(b)(2). In turn, "current monthly income" is defined as "the average monthly income from all sources" (other than those specifically excluded) "that the debtor [has] receive[d]" in the six full months preceding the filing of the bankruptcy petition. *Id.* § 101(10A).

"When a debtor expects no changes in financial circumstances, as 'in most cases,' her 'projected disposable income' under § 1325(b)(1) is simply her 'disposable income' as defined in [§ 1325(b)(2)]." *Davis*, 960 F.3d at 350 (quoting *Lanning*, 560 U.S. at 519). Yet, "where significant changes in a debtor's financial circumstances are known or virtually certain" prior to confirmation, "a bankruptcy court has discretion to make an appropriate adjustment" in calculating the debtor's "projected disposable income." *Lanning*, 560 U.S. at 513; *see also id.* at 524.

So far, so good. But here's where things start to get tricky. This case turns on whether John Penfound's post-petition 401(k) contributions—which he proposes to voluntarily withhold from his future wages—constitute "projected disposable income." If so, then the amount of such contributions must "be applied to make payments to unsecured creditors." 11 U.S.C. § 1325(b)(1)(B). If not, then the Penfounds can exclude this amount (or a fraction thereof) from their repayment plan. Doing so would significantly reduce the dividend paid to the Penfounds' unsecured creditors.

A.

"Before 2005, the 'overwhelming consensus' among bankruptcy courts was that wages voluntarily withheld as 401(k) contributions formed part of a debtor's disposable income." *Davis*, 960 F.3d at 350 (citation omitted); *see, e.g.*, *Harshbarger v. Pees* (*In re Harshbarger*), 66 F.3d 775, 777–78 (6th Cir. 1995). That consensus quickly splintered, however, after Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). *See* Pub. L. No. 109-8, 119 Stat. 23 (2005). Most pertinent for our purposes, BAPCPA added 11 U.S.C. § 541(b)(7), which states in relevant part that:

(b) Property of the estate does not include—

(7) any amount—

(A) withheld by an employer from the wages of employees for payment as contributions—

(i) to—

(I) [a 401(k)-retirement plan]

. . .

*except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2) . . . .*

11 U.S.C. § 541(b) (emphasis added). The italicized portion is known as the "hanging paragraph." And this "inelegantly drafted" statute has produced considerable confusion in bankruptcy cases nationwide. *Seafort*, 669 F.3d at 671; *see also In re Vanlandingham*, 516 B.R. 628, 632 (Bankr. D. Kan. 2014) (citing cases describing the hanging paragraph as "oddly-worded," "awkward," and a "Gordian knot"). Indeed, no fewer than four competing interpretations of the hanging paragraph have emerged, each of which presents its own interpretive difficulties. *See Davis*, 960 F.3d at 351–54.

The majority view—commonly referred to as the *Johnson* view—reads the hanging paragraph to "place[] retirement contributions outside the purview of a Chapter 13 plan," such that "[d]ebtors may fund 401(k) plans in good faith" during the commitment period. *See Baxter v. Johnson* (*In re Johnson*), 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).

In *Seafort*, however, "this court squarely rejected *Johnson*'s reasoning." *Davis*, 960 F.3d at 351. The two debtors in that case "were not making any contributions to their employers' 401(k) retirement plans at the time of the filing of their petitions." *Seafort*, 669 F.3d at 663. Both "were in the process of repaying a 401(k) loan to their employers' retirement plans." *Id.* at 663–64. And in their proposed Chapter 13 repayment plans, they sought to resume making contributions "post-petition after the[ir] 401(k) loans were paid in full." *Id.* at 664. We held that the bankruptcy code does not countenance such a debtor-friendly result. Instead, "post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected disposable income' that must be turned over to the trustee for distribution to unsecured creditors." *Id.* at 663. In reaching this conclusion, we had no occasion to decide what the code

would permit if a debtor were already "making voluntary retirement contributions when the bankruptcy petition [was] filed." *Id.* at 674 n.7.

Eight years later, in *Davis*, this court faced the question left open in *Seafort*. We confronted the situation of a debtor who had made steady contributions to her 401(k) for at least six months prior to bankruptcy. *See Davis*, 960 F.3d at 349, 357. And, unlike the debtor in *Seafort*, she sought to *continue* making those regular contributions throughout her commitment period. *See id.* at 349. Relying on various canons of statutory construction, we held that "the hanging paragraph is best read to exclude from disposable income the monthly 401(k)-contribution amount that Davis's employer withheld from her wages prior to her bankruptcy." *Id.* at 354–55. This interpretation construed BAPCPA's addition of the hanging paragraph "in a way that actually amend[ed] the statute." *Id.* at 355; *see Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). And it also gave "a meaningful effect—one not already accomplished by § 1325(b)(2)—to Congress's instruction in § 541(b)(7) that 401(k) contributions 'shall not constitute disposable income.'" *Davis*, 960 F.3d at 355; *see Liu v. SEC*, 140 S. Ct. 1936, 1948 (2020) (expressing the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute" (citation omitted)).

Again, though, we decided *Davis* on "narrow" grounds. 960 F.3d at 357. In building on *Seafort*, we squarely rejected another of the competing interpretations (the "*Prigge* interpretation"), which *never* would have permitted a debtor to shield voluntary post-petition 401(k) contributions from creditors. *See id.* at 351–52, 357; *In re Prigge*, 441 B.R. 667, 677 & n.5 (Bankr. D. Mont. 2010). But we did not decide between the two remaining approaches, which, as explained below, might have produced disparate results under different facts. *See Davis*, 960 F.3d at 357.

The first of the remaining interpretations was expressed by our Bankruptcy Appellate Panel (BAP) in *Burden v. Seafort* (*In re Seafort*), 437 B.R. 204 (B.A.P. 6th Cir. 2010). So we'll refer to it as "*Seafort*-BAP." This approach "construes the hanging paragraph to exclude the debtor's pre-petition contribution *amount*—rather than merely her accumulated savings—from her disposable income." *Davis*, 960 F.3d at 352 (citing *Seafort*, 437 B.R. at 210). Thus, to the

extent a debtor is making recurring 401(k) contributions "at the time" of filing, she may continue to do so post-petition. *See Seafort*, 437 B.R. at 209–10; *In re Jensen*, 496 B.R. 615, 621 (Bankr. D. Utah 2013). But that also means that a debtor may not begin, resume, or otherwise increase the amount of such contributions post-filing in an attempt to reduce payments to unsecured creditors. *See Seafort*, 437 B.R. at 210; *In re Read*, 515 B.R. 586, 590 (Bankr. E.D. Wis. 2014).

The fourth and final interpretation—known as the "CMI interpretation"—is similar to *Seafort*-BAP but differs in the mechanics. *See In re Anh-Thu Thi Vu*, No. 15-41405-BDL, 2015 WL 6684227, at *3 (Bankr. W.D. Wash. June 16, 2015); *In re Bruce*, 484 B.R. 387, 391–94 (Bankr. W.D. Wash. 2012). In a nutshell, it "construes the hanging paragraph as excluding the debtor's pre-petition contributions from the calculation of her 'current monthly income'—a subcomponent of § 1325(b)(2)'s disposable-income calculation." *Davis*, 960 F.3d at 352. The rationale is that the hanging paragraph does not merely state that 401(k) contributions "shall not constitute disposable income"; it says that any "amount" that has been withheld from wages towards a debtor's 401(k) plan "shall not constitute disposable income *as defined in section 1325(b)(2)*." 11 U.S.C. § 541(b)(7)(A)(i) (emphasis added); *see Anh-Thu Thi Vu*, 2015 WL 6684227, at *4. And, as we've seen, section 1325(b)(2)'s definition of "disposable income" is backward-looking. *See Davis*, 960 F.3d at 356. It is determined based on the debtor's "current monthly income," which is defined as her average income over the six full months preceding bankruptcy. *See* 11 U.S.C. §§ 101(10A), 1325(b)(2). "The CMI interpretation therefore allows a debtor to deduct from her disposable income the average amount she contributed to her 401(k) each month in the six months preceding her bankruptcy." *Davis*, 960 F.3d at 352; *see Bruce*, 484 B.R. at 394.

Usually, *Seafort*-BAP and the CMI interpretation will produce identical results. *Compare Seafort*, 437 B.R. at 210, *with Anh-Thu Thi Vu*, 2015 WL 6684227, at *4. Such was the case in *Davis*. *See* 960 F.3d at 357. "But a debtor who began making monthly 401(k) contributions less than six months before bankruptcy would likely have a higher disposable income under the CMI interpretation," and would therefore have to repay a higher amount to her creditors. *Id.* at 352.

To sum up, this court has twice interpreted the hanging paragraph. *Seafort* rejected the *Johnson* view. Then *Davis* rejected the *Prigge* view. Both of those rejections are binding on us. *See United States v. Mateen*, 739 F.3d 300, 304 (6th Cir.) (observing that a panel is bound by a "prior panel's statutory interpretation" where it was "essential to [the] decision"), *vacated en banc on other grounds*, 764 F.3d 627 (6th Cir. 2014); *United States v. Ingram*, 733 F. App'x 812, 815–16 (6th Cir. 2018) (similar). Still, *Davis* did "not choose between the *Seafort*-BAP and CMI interpretations," because Davis's employer had withheld the same amount "each month from [her] wages for at least six months prior to her bankruptcy." 960 F.3d at 357. As such, the *Seafort*-BAP and CMI interpretations are still on the table.

B.

That brings us back to the Penfounds' appeal. Based on the record before us, the Penfounds do not suggest that they can benefit from either the *Seafort*-BAP or CMI interpretations. In fact, they readily admit that John did not make any contributions in "the six (6) months prior to filing." Nevertheless, they ask us to "expand the ruling of *Davis*" and consider an interpretation of the hanging paragraph that appears quite similar to the *Johnson* view we explicitly rejected in *Seafort*. Specifically, the Penfounds urge us to "look at the totality of the circumstances" and assess John's "good faith" in deciding whether he may exclude voluntary post-petition contributions. *Cf. Johnson*, 346 B.R. at 263 ("Debtors may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans."). *But see Seafort*, 669 F.3d at 673 ("[T]he *Johnson* line of cases are not persuasive because they do not read § 541(b)(7) within the larger context of § 541 as a whole.").

The Penfounds' argument misses the mark. John's historical contributions and his inability to make further payments in the months leading up to filing may be relevant to the good-faith inquiry. *See Soc'y Nat'l Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 591 (6th Cir. 1992) ("Our circuit's good faith test requires consideration of the totality of circumstances."). But even though a debtor's good faith is one of the "mandatory requirements for plan confirmation," *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 456 (6th Cir. 2009), it is not by itself sufficient, *see* 11 U.S.C. § 1325(a)–(b); *Seafort*, 437 B.R. at 213. A court still "may not approve the plan" upon objection if the debtor proposes to exclude 401(k) payments that would

qualify as "projected disposable income" under the bankruptcy code.  11 U.S.C. § 1325(b)(1); *see Seafort*, 669 F.3d at 663.  The Penfounds point to no authority suggesting otherwise.  And their "good-faith" interpretation—which is essentially the *Johnson* view—is foreclosed by this court's precedent.  *See Seafort*, 669 F.3d at 673; *Davis*, 960 F.3d at 353, 357.

The Penfounds also criticize *Davis*, arguing that this court "*sua sponte* . . . add[ed] a six month look-back period without any justification," and that we should instead "consider a time period much longer."  We disagree on both fronts.  Indeed, the reason *Davis* examined the debtor's contributions in the six months pre-filing is that this is the *longest* look-back period supported by the text of the bankruptcy code and our precedent.  As we have explained, the *Seafort*-BAP interpretation would consider a debtor's recurring contribution amount "at the time [his] case [was] filed."  *Seafort*, 437 B.R. at 210; *see Davis*, 960 F.3d at 352.  And the CMI interpretation would rely on section 1325(b)(2)'s formula for calculating "disposable income." *See Davis*, 960 F.3d at 352.  In the Penfounds' case, that figure is based on their average monthly income "derived during the 6-month period" preceding filing.  11 U.S.C. §§ 101(10A), 1325(b)(2); *see Davis*, 960 F.3d at 352, 356.  So, under the CMI interpretation, the statute's text would not support looking back any further; only those contributions from the preceding six months could even *possibly* "constitute disposable income as defined in section 1325(b)(2)."  11 U.S.C. § 541(b)(7)(A)(i).

Finally, the Penfounds insist that *Davis*'s interpretation of the hanging paragraph "would be inequitable" on these facts.  But even were that the case, we have no license "to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019).  "Policy arguments are properly addressed to Congress, not this Court."  *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018); *accord Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13–14 (2000).

C.

Having rejected the Penfounds' proffered approach, we once again have no reason to choose between the *Seafort*-BAP and CMI interpretations of the hanging paragraph.  We hold only that the bankruptcy code's text does not permit a Chapter 13 debtor to use a history of

retirement contributions from years earlier as a basis for shielding voluntary post-petition contributions from unsecured creditors. This is true even if the debtor had no ability to make further contributions in the six months preceding filing; the code makes no exception for such circumstances.

\* \* \*

We AFFIRM the judgment below.